# ESTHER GORDON v. BEN FREEMAN.[1]

December 21, 1934.

No. 29,974.

*Briggs, Weyl & Briggs,* for appellant.

*Heitmann, McCabe, Gruber & Clure,* for respondent.

[1]Reported in 258 N. W. 19.

98

HILTON, JUSTICE.

Defendant appeals from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial. Defendant had moved for a directed verdict both when plaintiff rested and at the close of the evidence.

The action was one to recover damages for personal injuries sustained because of the alleged negligence of the defendant. The principal questions presented are (1) whether plaintiff was upon defendant's property as an invitee or licensee; (2) whether the evidence was sufficient to warrant submission to the jury of the issue of defendant's negligence; and (3) whether plaintiff's contributory negligence was established as a matter of law. We deem that a rather full statement of the facts is necessary.

Defendant operates two gasolene filling stations in the city of St. Paul, one of which is located at the northwest corner of Sixth and John streets, the other at the southwest corner of Seventh and John streets, being at opposite corners of the block between Sixth and Seventh streets. We will refer to them as the Sixth and Seventh street stations.

Business at the Seventh street station is confined to the sale of gasolene and oil. There is a small building which is used as an office; there is no lavatory or telephone. At this station defendant renders 24-hour service, the station remaining open all night.

At the Sixth street station defendant has a larger building, the south part of which is used as an office, and in the north part are two greasing pits. There is also space for repairing automobiles and for washing them. In front of each grease pit is a sliding door which is opened by raising it from the bottom and pushing it upward. The door in front of the north pit is larger than the other, and it is through it that trucks are admitted for the purpose of greasing, change of oil, etc. To the left of the south door and inside the building is a door leading to the office, in which there is a telephone. In this station the location of a ladies' rest room and lavatory somewhere in the same portion of the building as the office necessitates passing through the office to reach it. The evidence shows that these facilities were commonly used by customers

and by persons riding in the automobiles of customers. This station as well as the Seventh street station has the usual gasolene pumps outside the building. It did not remain open nights, but closed around ten o'clock in the summer and somewhat earlier in the winter, the lights both inside and outside being turned off when the station was closed.

One Henry Kaner, of Superior, Wisconsin, was in the business of hauling fruits and vegetables by truck from St. Paul to Superior. In the summer he made two or three trips a week to St. Paul and in the winter about one such trip a week. He usually arrived in St. Paul around midnight. For about a year he had had an arrangement with defendant personally, upon his arrival at St. Paul, to park the truck in the building at the Sixth street station over the north pit, and he and his driver were permitted to sleep in the office at that station and also to use the lavatory and telephone facilities therein. In return for this accommodation Kaner bought all his gasolene and engine oil from defendant and also, whenever necessary, had his truck greased there. This was done in the daytime while Kaner was at the market. Instructions so to service his truck were given to the attendant on the night later herein referred to. Sometimes Kaner was accompanied by his wife; at other times by some one of their relatives or friends, who, although they did not remain at the Sixth street station overnight, were permitted to use the facilities therein hereinbefore mentioned.

On January 31, 1933, plaintiff, a friend of Mrs. Kaner's, accompanied Kaner and a driver to St. Paul. They arrived at defendant's Seventh street station shortly after midnight. Kaner and plaintiff alighted from the truck at that station and went into the office. The driver drove the truck over to the Sixth street station, where the attendant, having preceded him, had opened the door in front of the north pit, over which the driver parked the truck for the rest of the night, it being the intention of Kaner and his driver to stay in the station as usual until morning. The attendant then closed that door, switched off the light, and followed the driver out of the south and smaller door, which he also closed by pulling it down to the floor "tight." That station was then dark. The two

100

then went back to the Seventh street station. What happened from there on is somewhat in dispute, but, considering the evidence most favorable to plaintiff, as we must, the following may be accepted as what actually occurred.

Kaner, at the request of plaintiff, inquired of the attendant if she, plaintiff, might use the telephone, the purpose being to call some friends in Minneapolis and have them come over to St. Paul and get her. She also intended to use the lavatory. Permission to use the telephone was given, and the attendant started across to the Sixth street station, Kaner, plaintiff, and the driver following him. When Kaner and plaintiff approached that station the attendant was standing in front of the south door looking toward the Seventh street station, and as they reached the door he left in that direction, apparently with the intention of serving some customer who had driven up to the Seventh street station. The door was then up about a foot and a half from the ground, and the inference is that the attendant had so raised it, for the evidence shows, as hereinbefore stated, that when he and the driver left the building after parking the truck therein, the attendant pulled the door down to the ground, completely closing it. Kaner finished opening the door, entered, and turned the light switch. Plaintiff also entered but stopped about a foot inside the doorway. As Kaner turned the switch, the light, which was located in the ceiling, came on, flickered, came on, and went out several times, came on again, and plaintiff took a step forward, falling into the grease pit, thereby causing the injuries complained of. There was no railing, shoulder, or other protection in front of the pit. There was a small automobile over that pit, which the truck driver thought was a Ford roadster. The color of the floor around the pit was dark, as was also the opening of the pit. As to just what moment, with respect to whether the light was on, flickering, or out, plaintiff took the unfortunate step forward, is not entirely clear; but it is fairly inferable that as the light came on the last time it stayed on for a brief moment, and in the instant that plaintiff stepped forward the light went out.

In addition to the door leading to the office from the grease pit room, there was also a door into the office directly from the outside. The exact position of this door does not appear, but it is indicated that to reach it by coming from the Seventh street station it would be necessary to go around part of the building; hence that it would be less inconvenient perhaps for the attendants at the latter station to enter by that door than to open the door leading to the south pit and cut across in front thereof to the door into the office. The attendant testified that all the doors to the Sixth street station were locked at night except the smaller of the two doors in front of the grease pits, but that he had the key to the door leading from the outside into the office. He stated that it was the practice when desiring to enter the office of the Sixth street station at night to enter by the small door in front of the south pit, cut across in front thereof, and thence to the office door. Kaner and his driver testified that that was the practice usually followed when they stayed at the station, Kaner stating that sometimes he would be admitted by the attendant through the outside door.

■ Defendant contends that plaintiff was a mere licensee and therefore cannot recover for there is no evidence of wilful or wanton negligence. If the evidence supports a finding that plaintiff had an invitation to enter the building in the manner she did, then defendant owed her the duty of exercising due care. In Fredenburg v. Baer, 89 Minn. 241, 243, 94 N. W. 683, 684, it is stated:

"To charge defendants with liability in this case it should appear that the use of the closet was either expressly or impliedly granted to the members of the secret societies; otherwise no duty devolved upon defendants to provide such members with safe passage to and from it. If the right had been expressly granted to the societies, it would extend, undoubtedly, to their guests, whether members or not, and would constitute an express permission to make use of the premises in the rear of the building in going to and from the closet."

In the instant case the jury could well find that plaintiff proceeded to and entered the Sixth street building in the manner she did at the invitation of defendant, and hence that she was an invitee.

The facts in this case do not bring it within the rule applied in Mazey v. Loveland, 133 Minn. 210, 158 N. W. 44, L. R. A. 1916F, 279, and in Schmidt v. George H. Hurd Realty Co. 170 Minn. 322, 212 N. W. 903, in each of which cases the plaintiff when injured had stepped beyond the bounds of the invitation and so was no longer an invitee.

■ The evidence as to defendant's negligence was sufficient to warrant submission thereof to the jury. The act of the attendant in partly opening the door in front of the south grease pit was an invitation for plaintiff to enter by that route. The attendant could have taken her around to the other door and thereby avoided the hazards attendant upon entrance through the room containing the pits; it was in his power to select the mode of entrance; he chose one that was inherently dangerous to one not accustomed to the arrangements of such a building; he failed to inform plaintiff of the existence of the pits. That Kaner also failed to warn her does not relieve defendant of the obligation. In addition, the condition of the light circuit and the question whether the pit was properly guarded were factors for the jury to take into consideration.

■ Appellant contends that the act of plaintiff in stepping forward either when the light was off or when it was flickering was, as a matter of law, contributory negligence. Many cases are cited holding that one who proceeds in darkness within a building the arrangement of which is strange to him is guilty of contributory negligence as a matter of law. Here, however, plaintiff cannot be charged definitely with having gone forward when it was dark or when the light was flickering. As hereinbefore stated, the evidence is not clear on that point, but the jury could find that plaintiff stepped ahead when the light was burning. In this part of the case the burden of proof was upon the defendant. There is no evidence that plaintiff had knowledge of the presence of the pit or

that she should have known or appreciated the danger of injury in taking a step forward. Judkins v. Sprague, 152 Minn. 1, 187 N. W. 705; Jones v. Schreiber, 166 Minn. 177, 207 N. W. 322; 45 C. J. p. 946, § 506. It was plaintiff's duty, of course, to exercise ordinary care to observe and appreciate danger or threatened danger. 45 C. J. p. 947, § 507. Whether or not she failed to exercise such care was a question for the jury. The defendant having extended the invitation to her to enter the building and having escorted her to the door thereof, thereby indicating the mode of entrance, plaintiff had a right to assume that he would not leave her so near to a hidden danger without some word of warning. Considering the likeness in appearance of the floor and the pit opening, the absence of anything in front of the pit that would distinguish it from the surrounding level floor, such as a shoulder of cement, and the presence of a car over part of the pit, the jury could well conclude that even when the light was on the presence of the deep and dangerous pit would not be apparent to an ordinary discerning person of plaintiff's experience, or lack of experience, with such establishments. Certainly the evidence does not present facts so clear as to make it "plain that all reasonable men can draw but one conclusion," which it must before the question of contributory negligence becomes one of law. Mechler v. McMahon, 180 Minn 252, 254, 230 N. W. 776, and cases cited.

We have examined all the assignments of error and find no ground for reversal.

Affirmed.