LUCIEN L. TETRAULT *vs.* FRED M. GHIBELLINI.

Suffolk.    May 3, 1944. — June 6, 1944.

Present: FIELD, C.J., QUA, RONAN, & WILKINS, JJ.

*Negligence,* Invited person, Automobile service station, Contributory.

One, who entered the office of an automobile service station to make a purchase of automobile accessories on sale there and, upon asking if there was a "public rest room," was directed by an attendant to a rest room maintained in the station for the use of its customers, might properly be found to have been an invitee of the proprietor of the station in following the directions and seeking the rest room.

Evidence of the circumstances in which an invitee in an automobile service station, in following directions of an attendant to go "straight ahead" to find a rest room, entered an unlighted lubrication room and there, after taking a few steps in the dark, was injured when he fell into a grease pit instead of entering the rest room, which was located near the door of the lubrication room but not "straight ahead," warranted a finding of negligence of the attendant toward him in giving misleading directions and also in not warning him of his danger; and did not require a ruling that he was guilty of contributory negligence.

TORT. Writ in the Superior Court dated February 21, 1941.

The action was tried before *Goldberg*, J.

*W. W. Jump*, for the defendant.

*J. J. Kelleher*, (*R. E. MacDonald* with him,) for the plaintiff.

WILKINS, J. This is an action of tort for personal injuries sustained by falling into a grease pit in the defendant's automobile service station. The jury found for the plaintiff, and the defendant's exception to the denial of his motion for a directed verdict raises the questions whether there was evidence of the defendant's negligence and whether as matter of law the plaintiff was not in the exercise of due care.

The evidence tended to show the following: On June 28, 1940, after 9 P.M. the plaintiff entered the front door of the office of the defendant's service station, where automobile accessories were for sale, in order to make a purchase. "The attendant was back of the counter and seemed to be busy with papers and did not pay any attention to him, so he looked around, and at the same moment asked him if he had a public rest room, and the attendant told him to go straight ahead, which he did. The direction given him was through a door partly open, an unlighted room." In this room he "made two or three steps and reached over his head for a light and fell into the grease pit." There was a carpet the width of the front door which ran directly from the front door in a straight line to the "lube-room" door, and, as appears from photographs admitted in evidence, off to the right from that carpet just before reaching the "lube-room" door there was another carpet leading at slightly more than a right angle about "three steps" to the rest room. After the attendant said, "Straight ahead," the plaintiff walked approximately twelve feet in the office, which was lighted. He "went in the direction that was a passageway that led straight ahead. . . . Before he came to a door that was directly ahead of him as he was walking, he did not look to his right . . . because he complied with the attendant's directions." The unlighted room "seemed very dark to him" coming from the "well lighted" office. "When he

reached for the light over his head he felt what was in front of him like a large object was a toilet bowl." "Only when he walked in could he see that the room it led into was dark. When he pushed the door open, he could see it was dark. When he pushed the door open and took a step inside this room, he knew it was in darkness. Asked if it was pitch blackness, just pitch dark, the plaintiff answered dark enough, like he said, coming from a bright room into that room. Asked if it was pitch black he said enough to obstruct vision. He couldn't see a thing; he didn't hesitate when he took the first step into the room. When he took the first step, he stepped into darkness, and it did not occur to him to call the attendant and ask where this man's room was. When he took the second step, he figured he was going to put his foot on the floor. Asked, 'But you didn't know did you? You couldn't see what you were putting it on?' He replied, 'No, I just took it for granted I was in a rest room.' He did not call to the attendant for directions. When he took the third step, he fell into the pit. He was not groping in the dark. From the time that he stood in front of the door, and as he pushed it open and walked in those two or three steps, he could not see a thing in that room; he knew and appreciated he was walking in darkness. After entering the room and before he fell he did see something like a dark object in front of him." The rest room was "maintained for the benefit of people who might come on the premises to buy things, for the benefit of the general public, for anybody who might come there to use the toilet."

The jury were warranted in finding that the defendant had invited the plaintiff to use the rest room. In that event the defendant owed the plaintiff the duty to use reasonable care for his safety. *Jacobsen* v. *Simons*, 217 Mass. 194, 196. *O'Brien* v. *Harvard Restaurant & Liquor Co. Inc.* 310 Mass. 491, 494. The defendant rightly does not question the authority of the attendant to speak for him. *Denny* v. *Riverbank Court Hotel Co.* 282 Mass. 176. *Sokoloski* v. *Splann*, 311 Mass. 203, 206. It could be found that the plaintiff was induced by what the attendant said to go through the wrong door into the lubrication room. *Statku-*

*nas* v. *L. Promboim & Son Inc.* 274 Mass. 515, 518, 519, 520. *Manell* v. *Checker Taxi Co.* 284 Mass. 151, 152. *Henebury* v. *Cabot,* 288 Mass. 349, 352. *Hart* v. *M. S. Kelliher Co.* 308 Mass. 213, 215. *Ryan* v. *Gray, ante,* 259. See *Palmer* v. *Boston Penny Savings Bank,* 301 Mass. 540, 543; *Gordon* v. *Freeman,* 193 Minn. 97. It likewise could be found that there was a failure to warn the plaintiff of attendant dangers not obvious to an ordinarily intelligent person which were known or in the exercise of reasonable care should have been known to the defendant. *Wills* v. *Taylor,* 193 Mass. 113, 116. *Pope* v. *Willow Garages Inc.* 274 Mass. 440, 443. *Kelley* v. *Goldberg,* 288 Mass. 79, 81. *Fulton* v. *Edison Electric Illuminating Co.* 303 Mass. 258, 263. Cases like *McNamara* v. *MacLean,* 302 Mass. 428, and *Lerner* v. *Hayes-Bickford Lunch System, Inc.* 315 Mass. 42, where a toilet room was not maintained for customers, are to be distinguished.

The plaintiff could not be ruled to have been negligent. The jury could find that he reasonably might have expected that the rest room would not be lighted, that, when injured, he was still proceeding reasonably as directed, and that it was not negligent to walk three steps in darkness when he did see something like a dark object in front of him, which he "felt" was a toilet bowl. In the circumstances the plaintiff might be found to have gone forward in the dark without being guilty of negligence. *Humphreys* v. *Portsmouth Trust & Guarantee Co.* 184 Mass. 422, 424. See *Jacobsen* v. *Simons,* 222 Mass. 449, 450. The jury could conclude that there was conduct by one for whom the defendant was responsible excusing the plaintiff. *Marston* v. *Reynolds,* 211 Mass. 590, 592–593. *Goldstein* v. *Slutsky,* 254 Mass. 501, 505. *Denny* v. *Riverbank Court Hotel Co.* 282 Mass. 176, 181. Cases like *Benton* v. *Watson,* 231 Mass. 582, 584, *Burke* v. *Crimmins,* 256 Mass. 14, 16, and *Lanstein* v. *Acme White Lead & Color Works,* 285 Mass. 328, 332, where the plaintiff was not misled by any act of the defendant, are plainly distinguishable.

*Exceptions overruled.*