THE STATE OF WYOMING, on the relation of WILLIAM BENHAM, FLOYD HOLLAND and JOHN L. SIMMONS.

*Petitioners and Appellants,*

vs.

R. E. CHEEVER, Mayor of the CITY OF CHEYENNE, WYOMING,

*Respondent-Respondent.*

(No. 2591; May 19th, 1953; 257 Pac. (2d) 337)

For the petitioners and appellants the cause was submitted upon the brief of William A. Riner, Jr., and Allen A. Pearson, both of Cheyenne, Wyoming.

For the respondent the cause was submitted upon the brief of A. Joseph Williams of Cheyenne, Wyoming.

## OPINION

PARKER, District Judge.

This is a mandamus proceeding brought by the State of Wyoming on the relation of William Benham, Floyd Holland and John L. Simmons, petitioners, against R. E. Cheever, Mayor of the City of Cheyenne, to compel him to call an election in which the voters would determine whether the City of Cheyenne should adopt the manager form of government. Messrs. Benham, Holland and Simmons made the usual requisite allegations in mandamus cases and in addition set

forth: that they and other residents and qualified electors of the City of Cheyenne, totalling 1739, signed petitions under the provisions of Chapter 29, Article 7, W.C.S. 1945, calling for a submission to the voters of that city of the question of adopting the City Manager form of government; that they presented their petitions to Mayor Cheever on August 5, 1952, and that he unlawfully failed, neglected and refused to issue a proclamation calling and setting a date for the special election. In his answer Mayor Cheever admitted that Messrs. Benham, Holland and Simmons were residents and qualified electors of the City of Cheyenne; that they and other qualified electors had prepared and submitted a petition; that there were 13,035 registered voters in the City of Cheyenne; that a petition was filed by petitioners on August 5, 1952; and he denied other allegations and alleged, as a separate defense, that the law relating to City Managers was void and inoperative because of its failure to specify certain time and manner of election and the terms of councilmen.

Section 29-702, W.C.S. 1945, the principal statute under consideration, reads as follows:

"Within five (5) days after filing with the city clerk of a city, of a petition of electors of said city equal in number to ten (10) per centum of the number of registered electors of such city, the mayor thereof shall by a proclamation to be published in at least one newspaper in said city for three (3) times, submit the question of accepting the provisions of this Act (§§ 29-701--29-921) at a special election to be held at a time specified therein not less than thirty (30) days and not more than sixty (60) days after said petition is filed. If the provisions of this act are not accepted at such special election, the question of accepting said provisions shall not again be submitted to the voters of said city for adoption within two (2) years thereafter. The signature to the petition need not all be appended to one paper, but each signer shall state his

place of residence and street number. One of the signers of each paper shall make oath that each signature to the paper appended is the genuine signature of the person whose signature it purports to be. * * *"

On the trial of the case several double sheets of "Petitions for Manager Form of Government" were offered in evidence. The comments and discussions of court and counsel regarding this evidence are somewhat indefinite and ambiguous.

One petition (Exhibit 1-B), containing three names, was rejected by the trial court because the circulator had not sworn to it, but the other petitions were admitted without definite objection and substantiating reason. The apparent views of Mayor Cheever's counsel are well summarized in the statement of Mr. Williams at page 22 of the record in which he states: "Now, Your Honor, there is no objection, generally, to receiving this petition (apparently all the copies of the 'Petition for City Manager Form of Government' except 1-B) as being the petition which was filed, so long as it is understood that the mere receiving of this petition itself does not establish the validity of the petition." There was no objection to the "petition" (or petitions) on grounds of improper identification or inadequate foundation for admission. After certain testimony as to various matters relating to the "petition", Mayor Cheever was called for cross-examination and admitted having received Exhibit 1 on August 5, 1952. He was asked if he intended and had announced that he would call an election on November 4th, and, over the objection of his counsel, said that he would if it were possible to do so, but he admitted that no proclamation had been issued at that time. Later, there was unchallenged testimony by the County Clerk of Laramie County, Wyoming, that the

number of registered voters in Cheyenne, Wyoming, on August 5, 1952, was 13,733.

At the close of appellants' case, respondent apparently moved to dismiss and the court, finding that petitioners had "failed to establish the petition filed by petitioners with the City Clerk of the City of Cheyenne complies with the requirements of the laws of the State of Wyoming pertaining to the adoption of City Manager government," sustained respondent's motion and dismissed the suit. From that order this appeal has been brought.

It appears that the second defense pleaded by Mayor Cheever, alleging the City Manager law to be void and invalid because of its inadequacies and failure to set out times, dates, etc., is not an issue herein, since this phase of the case was not considered by the trial court at the time of the presentation of the motion. Counsel for both appellant and respondent apparently concede in their briefs that there is one question to be decided by this court, viz: "Is a 'petition' apparently drafted under Chapter 29, Article 7, W.C.S. 1945, bearing the names of persons purporting to be electors of a city and being sworn to by the circulator thereof under oath that the 'signatures appended . . . were made in his presence and . . . are genuine signatures of the persons whose names they purport to be,' if such petition has been received in evidence by the trial court, prima facie sufficient to show to the Court that the instrument is what it purported to be?"

A similar question was presented to the court in the case of State v. McInerney, 63 Wyo. 280, 182 P. (2d) 28, another mandamus proceeding seeking to compel the Mayor of Cheyenne to call an election on the question of the city's adopting the city manager form of government. In the McInerney case, the court

generally discussed the situation there, citing some cases that hold petitions such as those in the instant case to be prima facie sufficient, unless the contrary is shown, and, on the other hand, some cases which hold that to sustain the findings and judgment in the absence of a statute, it must affirmatively appear that the petition was signed by a requiste number of qualified voters. Most of the cases to which our attention was directed by counsel in the instant case were presented in the McInerney case and considered by Judge Blume before he pointed out that:

(1) A determination of that question was not essential in the McInerney case inasmuch as the petitioners therein undertook to follow the second view,

(2) Various methods of proof are available to test the correctness of the petitions, e.g., poll tax records, telephone and city directories, books and other printed publications in general use, etc., and,

(3) The determination of the number of qualified electors on such a petition is not a "herculean" task under the circumstances.

This court in the McInerney case did *not* point out, as it probably would have, if the point had been in issue, that the Sarlls v. State, Ex Rel, Trimble, 201 Ind. 88, 166 N.W. 270, 67 A.L.R. 718, on which respondent herein relies exclusively, was determined on the basis of a statute, Section 10190 of the Burns Annotated Statutes of 1926 of Indiana. That Indiana statute provides in part:

"* * * Within five days after any such petition is filed, the clerk shall complete an examination thereof to determine whether it is signed by a sufficient number of qualified electors, and he shall certify the result of his examination to the legislative authority of the city at its first regular meeting held after the completion of such examination."

It is interesting to note that in Wyoming we have no such statutory provision. Our law, § 29-702, W.C.S. 1945, provides that within five days after the filing of the petition, the mayor *shall,* by proclamation, submit the question at a special election. Our statute prescribes no duties nor prerogatives for the clerk.

Bearing in mind the views of the court expressed in the McInerney case and considering other phases of the problem, it appears to us that a "petition" by which certain electors call for an election, if it is received in evidence by a trial court and purports on its face to follow the provisions of the statute and is not controverted, is prima facie sufficient to show that the petition was what it purported to be. This is particularly true if, in attempting to follow the provisions of the statute, the petitioners set out a statement on the face of the petition that "The undersigned electors of the city respectively petition that the following question be submitted," and if the oath of the circulator appended thereto provides, as it does in this case, that such person "is the circulator of this petition paper and that he is an elector and one of the signers thereof; and that the signatures appended thereto were made in his presence and that they are the genuine signatures of the persons whose names or signatures they purport to be."

We think that any document admitted into evidence without objection, if uncontroverted, may be considered prima facie by the court as that which it purports to be. As is said in Opp Cotton Mills v. Administrator of the Wage and Hour Division of the Department of Labor, 61 S. Ct. 524, 537, 312 U.S. 126, 155, 85 L.Ed. 624:

"Further the documents in question were received in evidence without objection. And even in a court of law if evidence of this character is admitted without ob-

jection it is to be considered and must be accorded 'its natural probative effect as if it were in law admissible.' "

Many United States Supreme Court cases are cited to the same effect. Were this not the law, it would be essential for the litigants in every lawsuit to prove at their peril every conceivable fact regarding the execution and authority for execution of every instrument placed in evidence, even though no objection to the instrument had been made at the trial, and even though the document were in the form prescribed by custom, legal precedent or even by statute. Such a philosophy would, create uncertainty and doubt in our courts as well as in all relationship between our citizens. If valid objections to an exhibit exist at the time of a trial, they should be raised and noted in the record with a statement of the reasons for the objection. In such case the objections may possibly be met—at least the adverse party will have had his day in court. Unless timely and sufficient objection is made to the introduction of inadmissible evidence and unless exception is taken to its admission over the objection made, the reviewing court should not consider the propriety of the admissibility of the evidence, 53 Am. Jur., § 135, notes 7 and 8. If inadmissible evidence is permitted to be introduced without objection, the triers of fact may give it the weight to which it is entitled. This rule has been held to relate to hearsay evidence. Kelly v. Dellman, 38 Wyo. 346, 266 P. 1058; Ideal Bakery v. Schryver, 43 Wyo. 108, 299 P. 284 (citing many cases in support of the rule). Testimony violating the Parol Evidence Rule is an exception since it is one of substantive law rather than evidence. See Bushnell v. Elkins, 34 Wyo. 495, 245 P. 304.

The practical difficulty of proving the qualifications

of signers, either by their own testimony or by that of others, mentioned by the court in the McInerney case, is of more than passing interest here and, as indicated by the court in the former case, such proof would be a gargantuan task and probably unjustified by the requirements of the law of evidence.

We must, in accordance with judicial precedent, as well as by logical analysis, give meaning to every part of the law and assume that the legislators who passed it had a reason for such passage and for every provision of the law or part thereof. As is said in Horack's Sutherland Statutory Construction, Third Edition, §, 4705, p. 339:

" 'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.' A statute should be constructed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error."

In that connection it is noted that § 29-702, W.C.S. 1945, specifically provides:

"One of the signers of each paper shall make oath that each signature to the paper appended is the genuine signature of the person whose signature it purports to be."

What logical reason could there be for the requirement thus inserted by the legislature for such verification, if it were not that the petition should thereafter be used as proof before either administrative or judicial agencies of the state? Had the legislature desired compliance with further requirements by persons interested in initiating the Manager form of city government, they undoubtedly would have so stated in the statute.

The question of submitting to the electors of a Wyoming city the proposition of accepting the provisions of the statute relating to the manager form of government in that city are not controlled directly by the Wyoming Constitution nor are the provisions relating thereto specifically designated as initiative and referendum. However, in many states similar provisions are constitutional and are so denominated. In that connection it is interesting to consider the words of the Oklahoma Court in the case of Caruth v. State, 101 Okla. 93, 98, 223 P. 186, 190, in which the court says in part:

"It was the intention of the framers of the Constitution to permit the inhabitants of municipalities to provide rules for their own government, and the very purpose of the initative and referendum is to clothe the electors with the right to legislate for themselves, and the question of the manner in which, or the procedure by which, a proposition is submitted for their consideration, is not nearly so important as their right to freely express their opinions at the polls. We do not want to be understood as saying that it is unnecessary to substantially comply with the provisions of law governing the initiative and referendum, but we do say that the law should be liberally construed in favor of permitting the electors to voice their sentiments, and they should not be throttled with technicalities. They will indicate their desires at the polls. If they determine to retain the charter as their governing law, the respondent will be unaffected. If they determine to, repeal the charter and adopt in its stead the laws of the state, as their organic law, the respondent will be compelled to bow to their will."

We think that the papers denominated "Petition for Manager Form of Government" filed by the appellants with the City of Cheyenne, upon being received in evidence by the District Court without the objection of counsel, constituted prima facie evidence which was

sufficient to show that these "Petitions" were what they purported to be. Thereafter, it became incumbent upon the city authorities to present evidence to the court questioning the validity and correctness of the petitions, if such officials doubted the propriety and correctness of such "petitions," In that connection, it seems to us that any type of initiative or referendum accorded to the voters by the legislature or by the Constitution is a right which should be liberally construed to provide the voters a right to speak. No technical inhibitions and prohibitions should be set up by administrators to whom such requests are by law submitted. If the request proves inherently bad for the City, the voters can so decide at an election. If the "petition" is legally imperfect, the city officials may challenge its validity in the courts, but should not be permitted to defend it by mere inertia.

The judgment of the District Court of Laramie County appealed from should, accordingly, be reversed, with direction for such further proceedings as are proper. It is so ordered.

*Reversed.*

BLUME, C. J., and HARNSBERGER, J., concur.