No. 40,236

BETTY NAVE, *Appellee*, v. DEAN HIXENBAUGH, also known as G. E. HIXENBAUGH, *Appellant*.

(304 P. 2d 482)

Opinion filed December 8, 1956.

*Wm. P. Thompson,* and *H. E. Jones,* both of Wichita, argued the cause, and *A. W. Hershberger, J. B. Patterson, Richard Jones, Jerome E. Jones,* and *William E. Palmer,* all of Wichita, were with them on the briefs for the appellant.

*Arthur C. Hodgson,* of Lyons, and *George B. Powers,* of Wichita, argued the cause, and *Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris,* and *Gerald Sawatzky,* all of Wichita, were with them on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action for damages for personal injuries sustained by plaintiff when her skirt ignited while she was standing in front of a gas stove in a filling station operated by defendant.

Defendant operated a gasoline service station in Lyons and, as a part of the maintenance and operation of the station, he furnished for the benefit and convenience of his customers, their families and guests, rest room facilities, free telephone, air, water and a warm fire on a cold day.

Plaintiff lived at Chase where she had been employed as a waitress. She left home in an automobile driven by her brother, bound for the home of their parents in Lost Springs. They reached Little River when the conditions of the roads and the bad weather caused them to turn back toward Chase. They drove through Lyons and as they proceeded west, stopped at defendant's service station to fill up with gasoline and use the telephone. Plaintiff and her brother got out of the automobile, and her brother directed the attendant to fill the car tank with gasoline, which the brother testified was done. They went into the filling station to use the telephone. It was a business telephone located on the desk of the station office on which the cash register was kept. Plaintiff's brother desired to call an aunt to advise her that they were not going to Lost Springs. Plaintiff followed her brother into the station as she had the telephone number he was to call. There were several other persons in the station. Plaintiff remained near the door while her brother, after securing permission, went to use the telephone. Be-

ing advised the line was busy, he joined her near the door. After waiting a few minutes, he turned and again called the number. Plaintiff, observing other people standing by the stove, turned and proceeded toward it. The stove was several feet from where she had been standing. She turned her back to the stove to warm herself, her dress being about a foot away from it. Plaintiff's corduroy skirt caught fire and she received serious burns. Attracted by her screams, several men including defendant attempted to extinguish the flames. Being unsuccessful in this, they finally tore the skirt from her body. The gas stove was an old circulating type with a door in front in which was inserted a number of squares of isinglass. Three of these had been broken out and the openings replaced by squares cut from tin cans. There was a dispute in the evidence as to whether there actually were openings in the front of the stove, in addition to the replaced areas. The stove was otherwise defective in that it did not have a draft diverter so that a down draft could be carried out through the draft diverter and prevent the flame from blowing out of the front of the stove. There was testimony that it was a very cold, stormy day and, under the circumstances existing, whenever the door of the station was opened it would tend to create a down draft which, in turn, would cause the flames to come out any opening in the front of the stove. No attempt will be made to narrate some seventy pages of abstracted testimony submitted in the case but, as far as necessary, it will be set forth as the issues are discussed.

On the evidence submitted, the jury returned its general verdict in favor of plaintiff, and at the same time returned its answer to special questions submitted by the court as follows:

"1. When the plaintiff entered the defendant's filling station, was she a business invitee or a licensee?

"Answer: Business invitee.

. . . . . . . . . . . .

"4. If you find plaintiff to have been a business invitee, did defendant maintain his premises in a reasonably safe condition for his customers?

"Answer: No.

"5. If your answer to Question 4 is no, in what way or ways were defendant's premises unsafe?

"Answer: Improper condition of the stove.

"6. If you have answered Question 5, were the unsafe condition or conditions visible to plaintiff if she had looked?

"Answer: Yes.

"7. Did plaintiff exercise reasonable care for her own safety?

"Answer: Yes.

"9. Were plaintiff's injuries the result of an accident which neither plaintiff nor defendant could have prevented by the exercise of ordinary care?

"Answer: No."

In view of the answers given, it was unnecessary for the jury to return answers to questions 2, 3 and 8. The answer to question 10 itemized the verdict. A summary of the answers clearly indicates that the jury found plaintiff was a business invitee; that defendant did not maintain his premises in a reasonably safe condition for his customers because of the improper condition of the stove; that the unsafe condition was visible to plaintiff if she had looked, but that she exercised reasonable care for her own safety, and that her injuries were not the result of an unavoidable accident. From an order overruling defendant's post-trial motions, he appeals.

Defendant first contends that the trial court erred in the admission of certain testimony. The petition alleged that the stove used by defendant was old, dilapidated, broken and dangerous, and improperly connected and operated so that the flames were allowed to and did extend beyond the front of the stove, and that downdrafts allowed the flames to proceed beyond their normal position in the stove; that it was originally built with a cover so that the flames could not extend beyond the front; that the stove was broken and deteriorated to a point that it allowed the flames to come in contact with the clothing of anyone standing in front of it, and that it no longer gave the protection for which it was originally designed and intended.

Plaintiff offered proof of lay testimony to show the actual condition of the stove, then offered the testimony of Eldon Means, a consulting chemical engineer who had specialized in investigating fires and explosions for more than twenty years. His qualifications as a chemist were admitted. He testified that for years he had made a study of gas stoves such as the defendant's stove was described; that he was familiar with the stoves which had isinglass squares in the front; that isinglass was used to shut off the flue gases, while at the same time gave insulation to the front of the stove; that when isinglass was used, there was no unnecessary danger and that the isinglass was very low in heat transfer characteristics, and did not transfer heat as rapidly as metal. Plaintiff's counsel asked Mr. Means:

"Now, what is the relationship of the heat transfer of isinglass that is supposed to be used there and tin cut out of a tin can?" Answer: "Oh, it would run several hundred times the amount of heat transfer." Question: "Which would?" Answer: "The tin." He further testified he did not believe that tin cut out of a tin can was the proper material to be used in the front of a gas stove such as described, and the stove was not properly operated in such condition; that there was greater danger to people, objects and cloth in close proximity to the stove when tin was used instead of isinglass, and if there was neither tin nor isinglass, and the stove was open, it would be even more dangerous, and that if he were called as an expert to look at a stove with tin in the squares in front, and asked if it was proper to operate it in that condition, his answer would be no. The witness was asked:

"Q. Assuming that a woman wearing a dress and assuming that she is wearing this dress—this skirt—assuming that that woman went over in front of this stove and stood with her dress approximately a foot from the stove— it wasn't actually measured but approximately a foot in front of the stove— and assuming this stove was properly equipped and properly operated, is there any reason for you to believe that would catch her dress on fire?

"A. No, there is no reason for me to believe that it would."

There was no objection to the testimony of the witness above related. The following hypothetical question was then asked the witness:

"Well, let me ask it again. I want to be sure that I have it right. Let's assume now that this same woman wore this same skirt and stood in the same place in front of the stove and the skirt did catch on fire. In your opinion, was the stove either improperly equipped—if that is the right word—had improper things on it or was improperly operated?", to which he answered over defendant's objection, "I believe it would."

Defendant contends that the court erred in permitting the witness, over his objection, to answer the last quoted question, that it was a conclusion and invaded the province of the jury. The general rule is that the normal function of a witness is to state facts within his personal knowledge and that ordinarily his opinions and conclusions are not to be received. However, it is recognized that a skilled witness is permitted to state facts known to him because of his special knowledge and experience or his inferences therefrom where the matter involved is such that persons without his special knowledge could not observe intelligently or draw correct inferences, although admission of such evidence has been

criticized. (22 C. J. 498; *Malone v. New York Life Ins. Co.*, 148 Kan. 555, 557, 83 P. 2d 639.) We are of the opinion that the trial court should have sustained defendant's objection to the question. However, in view of the entire record, we feel that the answer was not prejudicial to such an extent as to warrant a reversal. The witness had testified to all the facts as an expert, without objection, and had previously answered substantially the same question as the one objected to. The testimony in a manner was no more than cumulative, and errors in the admission of expert testimony may not be ground for reversal where such testimony is merely cumulative, and there is an abundance of other evidence which is competent and sustains the opinion of the witnesses. (*Tovey v. Geiser*, 150 Kan. 149, 159, 92 P. 2d 3.)

Defendant next contends that the court erred in overruling his motion for a new trial on the ground of newly discovered evidence. On his motion for a new trial, defendant proffered the testimony of Dr. Penrose S. Albright, a university professor, and head of the physics department, for the purpose of rebutting the testimony of Mr. Means. After the trial, defendant discovered the testimony of Mr. Means was neither complete nor technically correct and that defendant should be granted a new trial by reason of accident, surprise and newly discovered evidence, so that Doctor Albright's testimony might be presented to the jury in his defense. At the time of the trial, subsequent to the testimony by Mr. Means, and before the case was submitted to the jury, the defendant did not ask for a continuance or assert that he was taken by surprise by Mr. Mean's testimony. The petition alleged the stove was old, dilapidated, broken and dangerous, and that it was improperly operated, etc. It had been in the possession of the defendant for a long time. He was bound to anticipate that proof would be offered as to the condition of the stove and its operation at the time of the accident. Defendant failed to make a sufficient showing that he had no opportunity to meet the issue during the trial, and the trial court did not err in overruling his motion on that issue.

Defendant next contends that plaintiff was a mere licensee on his premises; she was a guest of her brother when she entered the service station; she did not buy or examine any merchandise or use the telephone on defendant's premises, and that the court erred in giving the latter portion of instruction No. 8 to the jury, which reads:

"A business invitee is a person who enters upon premises for the purpose of looking at or purchasing goods or wares. In this connection, you are instructed that it is not necessary for the plaintiff herself to purchase merchandise to be a business invitee on the premises. If she was a passenger in an automobile and if the automobile in which she was riding stopped at a public filling station with the intention of and for the purpose of purchasing gasoline, then her presence on the property and in the station created the legal status of a busines invitee. Therefore, if you find from the evidence that the plaintiff was a business invitee in this case, then the defendant owed to her the duty of maintaining his premises in a reasonably safe condition and the ordinary rules of negligence concerning which you have been instructed apply."

In order to be an invitee or a business visitor, it is not necessary that the visitor should himself be on the premises for the purpose of the possessor's business. The visit may be for the convenience or arise out of the necessities of others who are themselves upon the premises for such a purpose. (65 C. J. S. 518; Restatement of Torts, § 332[d]; *Murphy v. Kelly*, 15 N. J. 608, 105 A. 2d 841; *Gulf Refining Co. v. Moody*, 172 Miss 377, 160 So. 559; *Gordon v. Freeman*, 193 Minn. 97, 258 N. W. 19.) In the case of *Wingrove v. Land Co.*, 120 W. Va. 100, 196 S. E. 563, 116 A. L. R. 1197, it is of a gasoline station is an invitee of the operator of the station, and stated that a member of the family or an invited guest of a customer may recover for injuries sustained thereon, occasioned by the negligent failure of such operator to keep his station in a reasonably safe condition for the use to which it is devoted. Modern day motor travel is constantly increasing and it is common knowledge that many drivers have their families with them. It is also common knowledge that filling stations maintain facilities for the convenience of the driver and those who accompany him and when so used, both driver and passengers are invitees of the filling station. In such a highly competitive business, the station owners hold out many inducements for motorists to stop at their stations. In this day it would be a strange rule to say that the person buying gas at such a station was a business invitee and that members of his family accompanying him and using the available facilities were no more than licensees. We are of the opinion that the trial court stated the proper rule of law in instruction No. 8, and that there was ample evidence on which the jury could base its finding that plaintiff was an invitee on defendant's premises.

Defendant also contends there was no evidence to support the jury's findings that he did not maintain his premises in a reasonably

safe condition for his customers because of the improper condition of the stove. There was evidence that the stove was old, had been repaired on several occasions, and tin used in the door in place of isinglass; that isinglass does not transfer heat as rapidly as tin; that tin was not the proper material to use in the front of the stove; that it was not being operated as it was designed to operate, and it was dangerous to operate the stove under the conditions disclosed by the evidence; that flames came out any opening in the front of the stove because of the absence of a draft diverter. The evidence was in dispute as to whether there were any openings through which flames could extend. It is not necessary to narrate all the evidence on the question of defendant's negligence. We have reviewed the record and find sufficient evidence to sustain the jury's findings on that issue.

Defendant further contends plaintiff was guilty of negligence as a matter of law, so as to justify the court directing a verdict for defendant. His counsel invited attention to the fact the jury found in answering quesion No. 6 that the unsafe condition of the stove was visible to plaintiff, had she looked. Nevertheless, knowing the stove was hot, plaintiff walked toward, and turned her back to it.

The fact that the unsafe condition of the stove was visible to plaintiff had she looked, is not, in itself, sufficient in this case to make her guilty of negligence as a matter of law. The rule applicable in the instant case was restated in *Wainscott v. Carlson Construction Co.*, 179 Kan. 410, 413, 295 P. 2d 649:

"It is not in every instance where one exposes himself to a known danger and injury results that he is denied a right to recover, but only in that class of cases where the danger is so obvious and imminent that a person of ordinary prudence under like cirmustances would not subject himself to it. Danger may lurk within every defective condition, and yet may not be of such character that men of ordinary prudence would hesitate to expose themselves thereto. The defect and danger therefrom must be such that knowledge, or imputed knowledge thereof, would cause an ordinarily prudent person to appreciate the risk therefrom. The principle is too well established to require a citation of authorities to support it, that mere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery, even though there may be added to the knowledge of danger a comprehension of some risk. Mere knowledge of the offending instrumentality does not constitute contributory negligence as a matter of law. (*Louisville Gas Co. v. Fry*, 147 Ky. 754, 145 S. W. 748; *Loney v. Laramie Auto Co.*, 36 Wyo. 339, 255 Pac. 350, 53 A. L. R. 73, 80.)"

Plaintiff testified there were three men standing by the stove

and she thought it was safe and saw nothing about it that was dangerous. She walked over by them and turned her back to the stove with her dress about a foot from the stove in order to get warm. In answer to question No. 7, the jury found that plaintiff exercised reasonable care for her own safety. It is a well-established rule in this state that in determining whether a plaintiff is guilty of contributory negligence, the question must be submitted to a jury if the facts of record are such that reasonable minds in the exercise of fair and impartial judgment might reach different conclusions thereon. Where reasonable men may differ as to whether certain conduct is that of an ordinary person, the question is for the jury. (*Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909; West's Kansas Digest, Negligence, § 136 [9]; 4 Hatcher's Kansas Digest [Rev. Ed] Negligence, § 75.) Under the facts and circumstances in the instant case, it cannot be said that plaintiff was guilty of negligence as a matter of law.

Defendant further contends that the damages of $5,539 awarded to plaintiff are excessive. The record discloses plaintiff received first, second and third degree burns; that they were very painful and that the doctor treated her for several months. She received permanent scars. She was unable to work for thirteen weeks, and then worked part time for another two months. She suffered a $500 loss of wages and incurred $189 expense for medical bills. She suffered from hysteria which was a form of neurosis. In view of the foregoing and other evidence as to her injuries and suffering, it cannot be said that the verdict was so excessive as to evince passion and prejudice on the part of the jury who tried the case.

The judgment of the trial court is affirmed.

Price, J., dissenting: It is an elementary rule of law that a person is not to be excused for failure to see that which is in plain view to be seen. There is nothing mysterious about a fire in a stove such as we have here, and neither was there any hidden defect or danger. In answer to question No. 6, the jury found that the unsafe condition of the stove was visible to plaintiff if she had looked. In my opinion the evidence and that finding convict plaintiff of contributory negligence. If she had not stood so close to the stove she would not have been burned.

Thiele, J., concurs in the foregoing dissenting opinion.