John J. HONAN, Appellant (Plaintiff below),

v.

H. S. MOSS, d/b/a Moss Car Sales, Appellee (Defendant below).

No. 2945.

Supreme Court of Wyoming.

Feb. 27, 1961.

Jones & Jones, William R. Jones, Wheatland, for appellant.

Milton R. Foe, Wheatland, and Yegge, Hall & Shulenburg, Raymond J. Connell, Denver, Colo., for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

John J. Honan, while looking for a restroom when the car in which he was a passenger was stopped for service at the filling station of H. S. Moss, fell into an open grease pit and was injured. He brought suit for some $54,000, alleging that Moss had negligently left the pit uncovered and unguarded, causing plaintiff to fall into it and severely injure himself. Defendant denied generally, and in additional defenses pleaded substantially that the filling station was lighted; that the properly designated toilet room adjacent thereto was also lighted and had the door ajar; that the portion of the station containing the grease pit was not in use and was darkened; that plaintiff was not invited into that portion; and that any injury sustained by him was caused by his own negligence.

The court sitting without a jury found generally for the defendant and entered judgment accordingly. Plaintiff has appealed, complaining that the court erroneously admitted Exhibit 8, a statement, handwritten by the insurance company investigator and purportedly signed by plaintiff while he was in the hospital two days after the accident, and urging that the judgment is contrary to the law and the evidence.

According to plaintiff's testimony, he was a retired machinist, residing at Calgary, Canada, and on October 17, 1957, was traveling in Wyoming with his daughter Eva and Miss Charmian Johnson. That afternoon, they stopped in Cheyenne to eat and while there bought and consumed three "one shot" bottles of vodka, and plaintiff bought a half pint of Old Crow whiskey which he took along. They arrived in Wheatland about six o'clock in the evening and stopped at defendant's Standard Service Station. Defendant opened the restroom for Miss Johnson and upon returning to the car responded to plaintiff's request for the location of the men's room with, "through the office door." Plaintiff entered the office, going to the side of the room immediately opposite. He went along the wall for some little distance toward the rear, ran into rubbish and grease cans so that he could go no further, turned back along the wall, saw a closed door, pulled it open, saw that it was pitch black, and said to himself, "This must be the restroom." According to his own words:

> " * * * I put my hand on the door sill and going to reach around for the light switch on the inside of the door and I pulled this foot up and as soon as I hit the curb this foot went underneath me. I made a quick step to try to regain my balance and found myself in the bottom of the grease pit."

Plaintiff explained at some length about the nature of his treatment and injuries, none of which is of interest under the present status of the case.

Defendant testified that on the evening in question he unlocked the restroom for the ladies and on his return to the car, while he was in front of the outside door of the office, was asked by the plaintiff, "Where is the little boy's room?" He replied, "Just inside," and went on to service the car. It was dark enough that the lights were on at the pumps, in the office (two fluorescent), and in the men's restroom (a 75-watt incandescent). The service area containing the grease pit was closed and darkened with the outside doors bolted. The door leading to the office was closed but unlocked. Defendant also testified as to various dimensions of the premises with the location of objects therein, but such testimony is not particularly significant in view of a scale drawing and photographs of both the office and service area which were admitted in evidence by stipulation.

The court, over the objection of plaintiff, admitted Exhibit 8, plaintiff's statement, which in part reads:

"* * * I went back to the door to the garage area. The door was shut but it was not locked and I turned the knob and pulled the door back opening it wide. I was in need of a rest room bad at the time. I noticed when I opened the door, not paying any particular attention to the kind of door I was opening, and I saw that the garage area was black dark with no lights on.

"Because I have been in a number of stations where the rest rooms was at the end of the garage I thought that the room would be at the end of the garage along the wall. I thought there would be a light there but I took one step forward and one step down toward where I thought the room would be and that's when I fell and landed in the grease pit. * * *"

Plaintiff denied signing the statement but later conceded the correctness of certain answers purportedly given by him during the taking of an earlier deposition, which answers admitted his signing of one (undesignated) page thereof. Ruggles, the investigator, testified that he had visited Honan in the hospital two days after the accident, had identified himself as an investigator, had said he would need to get the facts in written form, and when Honan agreed had written the statement which Honan then voluntarily read and signed on each of the three pages.

There was little conflict in the evidence, plaintiff having presented an unchallenged recital of the occurrences before he reached Wheatland and the parties having stipulated for the admission of the scale drawing and photographs of the station. The only real disagreement concerning the facts arises from the variance between plaintiff's testimony concerning his activities immediately prior to the accident and the account which he is alleged to have given to the investigator, Ruggles. There is also a minor discrepancy in the testimony of Honan as it related to the half pint of Old Crow whiskey which he had purchased in Cheyenne. At the trial he said that the seal was not broken when they reached Wheatland but that he took a couple of swallows from the bottle while he was in the doctor's car after the accident. On cross-examination, however, he admitted having said in a previous deposition that the bottle probably had one-half or three-fourths of an inch out of it when they reached Wheatland.

The exhibits admitted by stipulation showed that the outside door of the office is in the truncated northeast corner of the building, the wooden door of the men's restroom some ten feet south of this, and a fifteen-pane glass door to the service area about the same distance west, both being visible from the office door but neither being directly in front of it. Above the restroom door is the word "men" in two and a quarter inch black lettering on white. At the threshold of the door between the office and the service area is a two and three-eighths inch step-down which is worn and uneven. On the office side of this door is a paper three and one-fourth inches by one-half inch containing the printed word "warning." The grease pit, three and one-half feet wide, sixteen feet long, and

five feet deep, is parallel to and three and one-third feet west of the wall containing the glass door. The northernmost portion of the pit, which is in front of the door, is covered for a space of two and five-sixths feet by planks and the remaining part is open.

Plaintiff's daughter testified that following the accident defendant said, "this had worried him for eight or nine years, the fact that the grease pit could have caused an accident but nothing had ever happened."

According to the deposition of Charmian Johnson, defendant said, "he had been afraid of this happening for nine years, and he explained about he ordinarily kept his own car on that grease pit, but had moved it off shortly, I believe, before we got there because a friend of his wanted to use the grease pit for his own car that night."

Defendant on being examined regarding such statements said, "I don't recall that."

■ Plaintiff argues that the court erred in admitting Exhibit 8, his purported statement. The record shows an objection to the introduction of the statement, but no reasons for the objection were given as is requisite. State ex rel. Benham v. Cheever, 71 Wyo. 303, 257 P.2d 337. There is no question here raised as to the propriety of cross-examining a witness regarding relevant portions of a former statement apparently inconsistent with his testimony at the trial. There is nothing in the record to show whether the court received the exhibit for its substantive and independent testimonial value [1] or merely for the purpose of impeachment, but as will be noted hereafter, plaintiff's version of the occurrences which led up to the accident is not greatly at variance with the testimony which he gave at the trial, and it is unlikely that the acceptance of one version over the other would have altered the result. Plaintiff's arguments on this phase of the appeal seem to deal with the principle that it is prejudicial for an attorney to continue in a case after he has testified and its corollary, that

a lawyer should not be permitted to testify for the side represented by his law firm. We are at a loss to understand this aspect of the argument since Ruggles is not shown to be an attorney. Plaintiff also insists that he was in agony at the time of the investigator's visit to the hospital and argues that the investigator's failure to reveal that the statement would later be used in an attempt to defeat plaintiff's claim constituted deceitfulness which robbed the statement of its probative force. No cases are cited which bear out this point, and it would seem to be without merit. Plaintiff's actual giving of the statement, his condition at that time, the disclosures made by the investigator prior to the time the statement was written, and the actual signing or failure to sign it were all the subject of testimony which the court was entitled to consider. Neither the evidence adduced at the trial nor the arguments presented here indicate that the court erred in its ruling which admitted the statement.

Plaintiff in presenting his thesis that the judgment is contrary to the law and the evidence states several rules which the defendant does not contest. For instance, he says that the greater the danger the greater the degree of care which must be observed and that one who invites another on his premises for the advantage of the invitor must have his premises in a reasonably safe condition and should not expose an invitee to unreasonable risk. He also points out that a plaintiff may not be barred from recovery because of contributory negligence if he acted as a prudent man under all the circumstances.

■■ Plaintiff cites cases to show that he was an invitee to the service area while defendant submits authorities indicating that persons in such circumstances lose the status of invitee and become mere licensees. It would avail little to review these cases since in the last analysis they turn upon the reasonable care which was exercised by the person injured. In the instant situation, the fact that the door to the service area

---

1. Barber v. State Highway Commission, Wyo., 342 P.2d 723, 726.

was of glass, a substance not commonly used for doors of restrooms, and the presence of a small but readable warning sign placed thereon were, among other things, elements which the trial court was entitled to consider in determining whether or not plaintiff was exercising due care immediately prior to the accident. The court was likewise entitled to consider the same factors in determining whether or not plaintiff's status changed from that of an invitee to a licensee at the time of the opening of the door. The trier of fact may infer that an invitation extends to those parts of the premises on or in which an invitee naturally or reasonably would go. Thompson v. Beard & Gabelman, Inc., 169 Kan. 75, 216 P.2d 798; and see 38 Am.Jur. Negligence § 100 (1941); A.L.I. Restatement, Torts § 343(b) (1934).

Interestingly enough, both plaintiff and defendant take comfort from the case of Loney v. Laramie Auto Co., 36 Wyo. 339, 255 P. 350, 53 A.L.R. 73. Plaintiff cites it for a number of quotations therein, 255 P. at pages 351, 352, 354:

> " 'A person who invites another to come on his premises, upon a business in which both are concerned, is bound to take care that his premises, and all appliances * * * are safe * * or else to give due warning of any danger to be avoided. * * * [19 Eng.Ru.Cas. 60]' "

> " ' * * * He must not expose them to hidden dangers of which they are not aware, but of which he is or may be, by the exercise of reasonable care, aware, especially if the danger is in the nature of a trap. [Thompson, Commentary on the Law of Negligence § 968]' "

> " 'The principle is too well settled to require a citation of authorities to support it, that mere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery, even though there may be added to the knowledge of danger

a comprehension of some risk. [Frost v. McCarthy, 200 Mass. 445, 86 N.E. 918]' "

Defendant urges that the following language of the Loney case is here applicable, 255 P. at page 353:

> " * * * Plaintiff, it is true, was bound by what he knew or might have known by the exercise of ordinary care. * * * And, if the danger, the peril, was known to him, or if it should have been known to him because of his past knowledge, or if it was patent and obvious, so that a man of ordinary prudence should have known of it, he cannot recover. * * * Defendant was not bound to warn the plaintiff of a peril and risk, which was open and obvious, and was or should have been appreciated by him as a man of ordinary prudence. * * * " '

Although the facts in the cited case differ from those in the instant litigation, the principles there announced are worthy of consideration and will be borne in mind in our further discussion.

Plaintiff quotes from other Wyoming cases:

> " 'The rule is succinctly stated in Cooley on Torts, vol. 2, page 1259 (3d Ed.), viz.: " * * * When he (the owner or lessee) expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." [J. C. Penney [Penny] Co. v. Robinson [Robison], 128 Ohio St. 626, 193 N.E. 401, 403, 100 A.L.R. 705]' " Dudley v. Montgomery Ward & Co., 64 Wyo. 357, 192 P.2d 617, 622.

> " * * * a traveler, to bar recovery because of contributory negligence, must not alone have knowledge of the defect and danger of a path, but must also appreciate this danger and must

know, as an ordinarily prudent person, that it is imprudent to travel over such path. * * *" Town of Cody v. Soth, 36 Wyo. 66, 252 P. 1021, 1022.

The rules of law therein stated are correct, but their value must depend upon their applicability to the facts which we shall discuss hereafter.

Other authorities presented to show the error of the trial court relate principally to situations wherein the facts differ materially from those at bar so that any application of the rules there enunciated must be by analogy. In analyzing these authorities it may be well to refer first to plaintiff's argument that the condition of the premises coupled with defendant's statement that "he had been afraid of this happening" constituted conduct which was most reckless and disregardful of the welfare of others.

One case cited on this point is Donnelly v. Southern Pac. Co., 18 Cal.2d 863, 118 P.2d 465, wherein plaintiff had been injured in a railroad collision. The facts dealing with such an accident are not similar to those in the case before us and the analogy is not apt.

Goldman v. House, 93 Cal.App.2d 572, 209 P.2d 639, 641, is presented as holding that wanton negligence can be implied from the conduct of a property owner who knew that an injury would probably result therefrom. The facts of the case were not parallel to the instant situation, especially since there the unlighted hallway was one necessarily traveled by plaintiffs and further there was a history of harassment and annoyance of the tenant plaintiffs by the defendant landlord in an apparent effort to force an eviction. Even so, the court merely held that "The ultimate facts found are sufficient to support the judgment."

McFarland v. Commercial Boiler Works, Inc., 10 Wash.2d 81, 116 P.2d 288, is quoted in part as justifying recovery against the purchaser of a boat engine who failed to leave the engine room in a safe condition and failed to warn those who were present in the area where the injury occurred. As is apparent, the facts were wholly different

from the situation before us. Additionally, the court after stating that it was not the trier of fact said its duty extended only to ascertaining whether or not substantial evidence was presented to the jury which would warrant it in deciding for the respondent.

These cases, turning as they do upon the question of the reasonable care of the litigants, are unpersuasive and disclose no holding of wanton negligence on facts similar to those in the case at bar.

Plaintiff's references to A.L.I. Restatement, Torts § 500 (1934), and to 52 Am.Jur. Torts § 23 (1944), which discuss generally situations where an alleged wrongdoer has created an unreasonable risk of bodily harm to another under circumstances which would lead a reasonable man to believe that his conduct will naturally or probably result in injury, are likewise of little specific assistance. Rather, they serve to emphasize the necessity of ascertaining in each instance what is or is not reasonable behavior.

It follows that the present case must be resolved on the issues of defendant's negligence and plaintiff's contributory negligence as either or both are sustained by the record, and these can be best reviewed in the light of certain authorities presented by counsel.

Plaintiff relies upon Hayes v. Richfield Oil Corp., 38 Cal.2d 375, 240 P.2d 580, a case wherein a woman, who fell into an unguarded grease pit in an unlighted area outside a service station where she and her husband were accustomed to park, recovered against the lessor of the station. As the quoted part of the opinion discloses, the property owners must use reasonable care. However, the court declined to say as a matter of law that the plaintiffs were negligent and stated that the question of contributory negligence was for the trier of fact. Thus, the case can hardly be said to warrant any reversal here, but on the contrary is authority for accepting the findings of the trial court.

Reliance is placed on Tetrault v. Ghibellini, 316 Mass. 477, 55 N.E.2d 956, where the

court upheld a verdict upon plaintiff's proof that he went to defendant's service station to make a purchase, asked directions, was told to go straight ahead, went through a partly opened door into an unlighted room, made two or three steps, reached over his head for a light, and fell into a grease pit. The decision is, of course, authority for the view that a jury may be justified in finding negligence of the property owner and freedom from contributory negligence of the customer, but the unescapable principle established by the case is that the question of reasonable care of both parties is one of fact, to be resolved in each case by the jury (or the court in cases where the jury is waived). To a similar effect is the holding in Nave v. Hixenbaugh, 180 Kan. 370, 304 P.2d 482, which is cited by plaintiff apparently for the principle that a plaintiff's mere knowledge of a dangerous situation does not constitute contributory negligence as a matter of law.

Downing v. Merchants' Nat. Bank of Greene, Iowa, 192 Iowa 1250, 184 N.W. 722, 20 A.L.R. 1138, is quoted (with a reference therein to Foren v. Rodick, 90 Me. 276, 38 A. 175) as holding that a business owes a duty to exercise reasonable care that visitors will not be likely to step into dangerous pitfalls by reason of misleading doors. However, here again the case was tried to a jury, and the decision approved the jury's right to determine both the negligence of the bank and the contributory negligence of the business visitor. Blumberg v. M. & T., Inc., 34 Cal.2d 226, 209 P.2d 1, argued here on the obligation of defendant to exercise reasonable care in finding dangerous situations, likewise holds the matter one which should be submitted to the jury.

■■ There are many cases which relate to injuries of visitors in circumstances more or less similar to the situation before us, but none have been presented to disclose identical facts. Those which disclose some circumstances which are comparable are unanimous in holding that the question of reasonable care by both parties will seldom be taken from the finder of fact. Here the record discloses nothing which establishes reasonable care either by plaintiff or defendant *as a matter of law*. Certain facts, undoubtedly, point to steps which defendant might have taken to avoid the accident, but there can scarcely be disagreement that defendant's failure to see the "men" sign in the lighted office, his opening a glass door to find a restroom, and his subsequent entering a darkened area constituted factors entitled to consideration in resolving whether or not he was contributorily negligent. As has often been said, whether or not a party acts negligently or carefully is a question determinable by the trier of fact if there is any evidence which would show or tend to show the relative care or negligence which was exercised, or if intelligent minds may draw different conclusions as to the matters at issue. Meredith GMC, Inc. v. Garner, 78 Wyo. 396, 328 P.2d 371; Dallason v. Buckmeier, 74 Wyo. 125, 284 P.2d 386.

The judgment must be affirmed.