No. 35,275

Howard Graves, Jr., *Appellee*, v. The Armstrong Creamery Company, *Appellant*.

(118 P. 2d 613)

Opinion filed November 8, 1941.

*A. W. Hershberger, J. B. Patterson, Enos E. Hook, Patrick J. Warnick, R. E. Kirkpatrick* and *Richard Jones*, all of Wichita, for the appellant.

*Z. Wetmore, George M. Ashford* and *Waldo B. Wetmore*, all of Wichita, for the appellee.

The opinion of the court was delivered by

Hoch, J.: This appeal relates to overtime pay due an employee under the federal fair labor standards act of 1938 (often called the "wages and hours act"), hereinafter referred to as the act. The employer agrees that overtime pay was due the employee. The only issue is the method of computing it. The employee had a fixed monthly salary or wage covering no fixed or agreed number of hours of work, and the number of hours he worked fluctuated from week to week.

Appellant, the Armstrong Creamery Company, manufactures butter and perhaps other products. Appellee, Howard Graves, Jr., was employed by the creamery company from October 7, 1939, to August 31, 1940, at a wage or salary of $95 per month, paid bimonthly. The federal administrator of the act ruled that the employer's business was interstate in character and therefore subject to the act. After his employment had terminated the employee brought action

in the city court of Wichita to collect pay for "overtime" work covering the period from October 1, 1939, to August 10, 1940. The employer offered to confess judgment, but there was disagreement over the method of computation. From an adverse judgment in the city court the employer appealed to the district court, where, again, the only issue was the method of computation. The district court adopted the method supported by the employee and gave judgment against the employer for $267.78 for overtime pay, for a like amount for "liquidated damages" provided under the act, and for $150 attorney's fees, making a total judgment of $685.56. From that judgment the appeal is taken.

The fair labor standards act went into effect on June 25, 1938. Its primary purpose, stated in the act, was to correct, as to industries engaged in interstate commerce, "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well being of workers." By the terms of the act its administration was placed in a wage and hour division created in the United States Department of Labor and under an administrator to be appointed by the president by and with the advice and consent of the senate and to be paid a salary of $10,000 a year. The minimum wage provisions of the act, as such, are not here involved. We need to note specifically only the provisions for maximum hours and for overtime pay.

It is not unlawful under the act to employ workers for more than the number of hours per week specified in the act. The act only prohibits such overtime employment "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than *one and one-half times the regular rate at which he is employed*" (italics ours). (29 U. S. C. A., § 207.) The "hours above specified" are forty-four hours per week during the first year following enactment of the act, forty-two hours per week during the second year, and forty hours thereafter. While the period of employment here involved covered portions of the first and second year, we can simplify the issue without otherwise affecting it by treating the whole period as subject to the forty-two hour provision.

The act further provides that any employer who violates the provisions of section 207, *supra,* shall not only be liable to the employee for the overtime pay, but also for a like amount as "liquidated damages," and also for a reasonable attorney's fee and for costs of

the action. The action to enforce such liability may be brought "in any court of competent jurisdiction." (29 U. S. C. A., § 216.)

A few further statements will help clarify the situation. Appellant did not contest the contention that it was engaged in interstate commerce nor that appellee's work brought him within the act. Appellant did not deny that the appellee worked overtime as defined in the act or that he is entitled to overtime pay therefor. Nor does appellant contend that it is not liable for "liquidated damages" in an amount equal to the overtime pay properly computed. It is not charged that appellant *willfully* violated the act. In the trial court appellant "offered to confess judgment" in the amount of $139.22 and left the matter of attorney's fees to be allowed the employee "for the consideration of the court."

Appellee was employed at a fixed salary of $95 a month. There was no agreement for any specific number of hours per week, and the number of hours actually worked fluctuated from week to week as the circumstances each week might require. There is no dispute as to the correct method of determining the regular weekly wage. It was arrived at by multiplying the monthly wage of $95 by 12 and dividing by 52, which gives $21.92 as the regular weekly wage.

Appellee contends that in order to determine the "regular rate" per hour "at which he is employed" (section 207, *supra*) the weekly wage of $21.92 should be divided by 42, with a resultant regular hourly wage rate of $.5219. This amount would then be multiplied by one and one-half to arrive at the overtime rate of pay for the hours worked "in excess of the hours above specified" (section 207). Appellant contends that the correct way to determine the regular hourly rate of pay in any particular week is to divide the weekly wage of $21.92 by the number of hours actually worked during that week. The rate thus arrived at would then be multiplied by one and one-half to determine the overtime rate for that week. For instance, if in a certain week the employee worked 46 hours, his regular hourly rate of pay for that week would be $21,92 divided by 46, or $.4765. The overtime hourly rate, accordingly, for the four overtime hours that week would be one and one-half times $.4765, or $.7147 per hour.

At this point it should be made clear that there is no contention here that the employer has any right to require the employee to work a longer number of hours in any work week than reasonably contemplated within the terms of his employment. The appellee

does not complain about the number of hours worked. Nor is any question of minimum wages involved. And in this whole discussion we are assuming, of course—as the administrator's bulletin herein-after referred to must assume—that the number of hours used in making the computation falls within the reasonable limits of the employment. Any argument which assumes a number of hours per week which is outside the reasonable limits of the employment or which results in violation of minimum wage provisions and then poses extreme illustrations based upon such false assumption is fanciful and without persuasion.

The federal administrator of the act, clothed with broad powers of administration, has issued various bulletins for the information of both employees and employers. These interpretative and ad-ministrative bulletins have covered all phases of the act and include the matter of overtime pay and the correct method of computing it for the many different kinds of employment. The method adopted and promulgated by the administrator for employment of the nature here involved is the one contended for by appellant. The trial court, however, declined to follow the administrator's method and appar-ently the principal argument against it which impressed the court was that if the hourly rate in any one week is determined for that week by dividing the weekly rate by the number of hours worked during the week the result would be that the more hours an em-ployee works in any particular week the less his regular hourly rate of pay will be for that week. But does not that result reflect a plain mathematical fact? Conversely, is it not also obviously true that if the employee works less than forty-two hours in any par-ticular week his hourly wage rate for that week is his weekly pay divided by the hours actually worked, and not his weekly pay divided by forty-two? And, of course, such an employee as the appellee is entitled to the full weekly pay each week even though in some weeks he may work less than forty-two (now forty under the act) hours. In this connection it is well to state again that there is nothing unlawful, *per se*, under the act in a work week of more hours than those specified. It is only required that such excess hours be paid for at the overtime hourly rate and that in no event shall the basic pay be reduced below the minimum wage prescribed in the act.

The opinion of the administrator as to the correct method of com-putation is embodied in "Interpretative Bulletin No. 4," under a

general heading of "Maximum Hours and Overtime Compensation," "United States Department of Labor Wage and Hour Division Office of the Administrator." This bulletin was originally issued in November, 1938, soon after the act went into effect. While there have been subsequent revisions, they do not affect the matter at issue. This bulletin deals with different classes of employees, and paragraph 12 deals with "Salaried Employees—Irregular or Fluctuating Number of Hours." The paragraph—based upon the 40-hour provision now applicable—is as follows:

"If an employee earns $23 per week but works a fluctuating number of hours, his regular rate of pay will be the average hourly rate each week. Suppose that during the course of four weeks the employee works 40, 46, 50, and 41 hours. His regular hourly rate of pay each week is approximately 57.5 cents, 50 cents, 46 cents, and 56.1 cents, respectively. For the first week the employee is entitled to be paid $23; for the second week $24.50 ($23 + [6 hours × 25 cents]) or ([40 hours × 50 cents] + [6 hours × 75 cents]); for the third week $25.30 ($23 + [10 hours × 23 cents]) or ([40 hours × 46 cents] + [10 hours × 69 cents]); for the fourth week approximately $23.28 ($23 + [1 hour × 28 cents]) or ([40 hours × 56.1 cents] + [1 hour × 84 cents])."

This computation is in accordance with the one contended for by appellant. As far as we have been able to learn, the interpretation promulgated in the bulletin has been followed consistently by the administrator. From the "Employers' Digest of Wage-Hour Law" we quote:

"Where there is no regular number of hours per week fixed by agreement or custom, the regular hourly rate is the weekly wage, or the monthly wage reduced to a weekly wage, *divided by the total number of hours actually worked in the week*. Illustration:

"Beatrice Mary Foster's regular rate of pay is $15 a week, but her weekly number of hours is not set by agreement or custom. One week she works 37 hours; the next 52, etc. Therefore, her regular hourly rate of pay changes weekly. In the week under consideration she worked 50 hours. Her regular hourly rate in that week was $15 divided by 50, or 30 cents an hour" (Italics ours). (1940 WH Man., p. 11.)

From another bulletin issued by the administrator's office, "Employees' Guide to Wage-Hour Law," we quote:

"Weekly, semimonthly, or monthly salary. If you are paid a weekly, semimonthly, or monthly salary, you can find your *regular hourly rate of pay* by dividing your wage by the number of hours you worked. To find your weekly wage, if you are paid a monthly salary, multiply the monthly wage by 12 and divide by 52. For a semimonthly, salary, multiply by 24 and divide by 52.

"If you are hired to work a regular number of hours each week, then you should divide your weekly wage by that regular number of hours (instead of

the *actual* number of hours worked) in order to find your *regular hourly rate of pay."* (Italics by administrator.) (1940 WH Man., p. 15; also, see 3 Wage and Hour Reporter, No. 10, pp. 86-87; 4 Wage and Hour Reporter, No. 4, p. 34.)

The method suggested by the administrator carries out, we think, the terms and intent of the act. Moreover, it is a well-established rule that in the construction and interpretation of a statute, and particularly one of this character, the interpretation placed upon it by the executive agency charged with the duty of administering it should be given great weight. (59 C. J. 1025-1028, § 609; *State, ex rel., v. State Highway Comm.,* 132 Kan. 327, syl. ¶ 3, 295 Pac. 986; *Harrison v. Benefit Society,* 61 Kan. 134, 59 Pac. 266.) This does not mean, of course, that courts are bound to follow the interpretations of the administrative agency, and they should not do so if such interpretation appears to the court to be clearly erroneous. But the general rule is a sound one. In the instant case we are dealing with a federal act of nation-wide application. Uniformity of interpretation and operation throughout the country, which is in every way desirable, will be promoted by adopting the method of calculation promulgated by the administrator. We find no reason in this case for doing otherwise.

We have examined carefully the authorities cited by appellee in support of his contention. None of them is in point.

The case of *Abroe v. Lindsay Bros. Co.,* decided by the Municipal Court, City of Minneapolis, Minn. (3 Labor Cases, [C. C. H.] 60,-950), dealt only with the question of whether "liquidated damages" provided for in the act (29 U. S. C. A., § 216, b) constitute, in fact, liquidated damages or a penalty. The question of computation of overtime pay was not involved.

*Emerson v. Mary Lincoln Candies, Inc.* (2 Labor Cases, [C. C. H.] 1040), being the opinion of an official referee in the New York supreme court, does not disclose the method by which the employee's regular hourly wage rate was arrived at, and the method does not appear to have been in issue.

*Emerson v. Mary Lincoln Candies, Inc.* (173 Misc. 531, 17 N. Y. S. [2d] 851), dealt with other questions and in no way involved computation of overtime pay.

*Reeves v. Howard County Refining Co.* (33 F. Supp. 90), decided by a Texas district court, dealt with the cases of several employees none of which corresponds to the situation here presented, and with questions of law—particularly with the "liquidated damages" pro-

vision—not here at issue. It presents nothing which supports appellant's contention as to computation.

The total number of hours of overtime work for which appellee is entitled to receive overtime pay is not in dispute. Appellant kept no record of the matter, contending here that it did not at the time know that appellee was subject to the act, but accepted the record of overtime hours submitted by the appellee. The record here, however, does not disclose the number of overtime hours which appellee worked in each week and we cannot, therefore, determine the exact amount to which he is entitled. He had already been paid for the full number of hours worked as far as basic pay is concerned. The amount yet due for each week is fifty percent of the basic or regular hourly pay, determined as hereinbefore indicated, for all the overtime hours in that week. To the aggregate amount thus arrived at, for the whole period, should be added an equal amount as "liquidated damages" as provided in the act. In the matter of the allowance of an attorney's fee we shall not disturb the order of the trial court fixing the amount at $150, that question having been left by appellant "for the consideration of the court." We find no lawful basis, however, for an allowance of an attorney's fee in this court in connection with this appeal.

The judgment is reversed except as to the allowance of an attorney's fee, and the case remanded to the district court with directions to determine the amount due the plaintiff in accordance with the conclusions hereinbefore stated and to render judgment therefor.