No. 39,534

VERNA BRANSTETTER, *Appellant* and *Cross-Appellee*, v. RICHARD W. ROBBINS and EDWARD ROBBINS, doing business as Robbins Ranch; RICHARD W. ROBBINS and EDWARD ROBBINS, *Appellees* and *Cross-Appellants*.

(283 P. 2d 455)

Opinion filed May 7, 1955.

*Clarence N. Holeman,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson, Wilbur D. Geeding,* and *Thomas E. Woods,* all of Wichita, and

*John W. Graue,* of Greensburg, were with him on the briefs for the appellant and cross-appellee.

*W. D. Jochems,* and *J. Wirth Sargent,* both of Wichita, argued the cause, and *David J. Wilson* and *E. Keith Beard,* both of Meade, *Emmett A. Blaes,* of Wichita, and *Martin Aelmore,* of Greensburg, were with them on the briefs for the appellees and cross-appellants.

The opinion of the court was delivered by

ROBB, J.: This appeal was taken from the trial court's order sustaining appellees' demurrer to the first and second causes of action set out in appellant's petition. A cross appeal has been filed by the appellees from another order of the trial court, which refused appellees the right to take depositions of certain witnesses, including the appellant.

The petition of the appellant, which was filed in the court below on July 23, 1953, omitting formal parts, for the first and second causes of action alleged as follows:

"3. Plaintiff further alleges that during the early part of December, 1951, her husband was hired by the Defendants through their agents, servants and employees, to work on the said Robbins Ranch; that the Defendants and each of them provided a house for occupancy of this Plaintiff and her husband; said house being located on property owned or controlled by said Defendants and each of them.

"4. Plaintiff further alleges that she moved into said house upon the instructions and invitation of the Defendants, their agents, servants and employees; that the Defendants through their agents, servants and employees, moved the furniture of this Plaintiff into the house, which she was to occupy while her husband was employed on the Robbins Ranch.

"5. That said premises were represented and held out to be safe and fit for human occupancy, when in truth and fact, there were hidden and latent defects of a dangerous nature; that said hidden and latent defects were known, or should have been known or within the knowledge of the Defendants and each of them.

"6. That Plaintiff, during the early part of December, 1951 while occupying said house, received an injury to her eyes which has resulted in the removal of one eye, and loss of sight in the other.

"7. That after receiving said injury, Plaintiff discovered a quantity of a dangerous product known as 'Barnyard Spray' in the food cabinet of the kitchen of said house; that there were no warnings of the presence of said dangerous product; that a normal, prudent person would not expect to find barnyard spray in a food cabinet, and that the presence of said barnyard spray was within the knowledge of only the Defendants, their agents, servants and employees.

"8. That in addition to the removal of one eyeball and the loss of sight in the other eye, this Plaintiff has suffered extreme, excruciating and lasting pains through her eyes and head; that as a result of said poison getting into

the eyes of this Plaintiff, same ate into her bloodstream, causing her entire body to break out into a severe rash, which remained with her for many, many months and caused her great humiliation as well as pain; that as a result of said poison getting into the system of this Plaintiff, she has become a highly nervous, irritable individual, is unable to perform her family and household duties, and worries constantly because of her condition.

"9. Plaintiff further alleges that she has had hospital and medical expenses of approximately $2,000.00, and that she will have additional hospital and medical expenses of from three thousand ($3,000.00) to four thousand ($4,000.00) dollars.

"10. Plaintiff further alleges that said poison is still eating on and into said Plaintiff, and is causing her extreme discomfort and pain, and that she is unable to sleep without the use of sedatives.

"11. Plaintiff further alleges that at the time of said accident, she was forty-seven years of age, had a life expectancy of twenty-four years, and was in excellent health, without a worry in the world; that she is a registered nurse and that due to the loss of her sight, she will never be able to practice nursing again.

"12. Plaintiff further alleges that she has been damaged, by the failure of the Defendants, their agents, servants and employees, to provide a safe premises for occupancy, and by their failure to provide a safe place for keeping their barnyard spray as herein alleged, to the extent of Two Hundred Thousand ($200,000.00) Dollars.

"SECOND CAUSE OF ACTION.

"COMES Now the plaintiff and for her second cause of action, and includes all of the allegations in said first cause and makes the following additional allegations, to-wit:

"1. Plaintiff alleges that by reason of the Defendants, their agents, servants and employees, the names of same being unknown to this Plaintiff, having placed a product known as 'Barnyard Spray' into a food cabinet, without giving any warning to person or persons who might occupy the premises and more particularly this Plaintiff, they are guilty of gross, wanton, and wilful negligence which entitles Plaintiff to punitive damages.

"2. Plaintiff further alleges that by reason of the Defendants having failed to give any warning of the presence of a highly dangerous chemical, which the Defendants knew to be of a highly dangerous quality, they are guilty of negligence which entitled Plaintiff to punitive damages.

"3. Plaintiff further alleges that she is entitled to punitive damages of One Hundred Thousand ($100,000.00) Dollars."

A demurrer was filed to this petition on the grounds that the petition did not state facts sufficient to constitute a cause of action in favor of appellant and against these appellees. The demurrer was argued and sustained on March 3, 1954, and the appellant has appealed from that order. Notice of appeal was served on March 4, 1954.

Appellant in her two specifications of error complains that the

court erred in sustaining defendants' demurrer to plaintiff's first cause of action and in sustaining defendants' demurrer to plaintiff's second cause of action.

The principle to be determined by this appeal is whether the facts pleaded in the petition sufficiently state a cause of action by reason of a demurrer having been lodged against it. The rule of liberal construction must be applied in this case since there were no motions filed whereby the rule of strict construction could be invoked. Therefore, the first question presented is whether any negligence on the part of appellees was pleaded by the appellant.

Appellant cites the case of *Moore v. Parker*, 63 Kan. 52, 64 Pac. 975, wherein it was pleaded that the platform of a well, the only source of water supply, collapsed because the landlord had used defective and unsafe sleepers or stringers in the construction and had covered them with a wood platform or planks; the landlord knew and negligently, fraudulently and carelessly concealed this knowledge from the tenant and also his wife, who was injured; the defects were not obvious and could not be discovered by the exercise of ordinary care; and the defective sleepers and stringers gave way, precipitating the tenant's wife into the well, whereby she sustained personal injuries. These facts were all set out in the petition, which was held sufficient as against a demurrer. The court in that case set out the applicable rule of law, as follows:

"A landlord is not an insurer or a warrantor, nor is he compelled to exercise constant care and inspection; but if he knows that the premises which he is about to let are defective and in a dangerous condition, especially if such dangerous or 'defective place is not obvious or discoverable to the tenant by the exercise of ordinary care, and he does not inform the latter of such defective or dangerous place, and injury is occasioned thereby to the tenant or a member of his family who is not aware of such defective or dangerous place, while in the exercise of ordinary care, the landlord is liable in damages. The law requires good faith on the part of the landlord toward his tenant." (Syl.)

At page 55 of the same opinion the court quoted Wood on Landlord and Tenant as follows:

" 'Where there are defects in the premises, not open to ordinary observation, of the existence of which the landlord knows, or ought to know, which are dangerous to the person of the tenant, it is his duty to disclose them to the tenant, and if he fails to do so, and the tenant is injured thereby, the landlord is responsible for all the damages that ensue to the tenant therefrom.' "

In the same type of case as the Moore case, our court in *Bailey v. Kelly*, 86 Kan. 911, 122 Pac. 1027, at first reversed the trial court's order which had sustained a demurrer to the evidence. However,

upon a later presentation of the case (93 Kan. 723, 145 Pac. 556), the rule in the first case was reversed and the trial court was ordered to sustain the demurrer to plaintiff's evidence. The facts in the Bailey case, as set out in the syllabus in 93 Kan. 723, were as follows:

"A landlord leased vacant property upon which there was a cistern covered by a loose lid lying upon a slightly raised platform. The lease was without warranty or covenant to repair on the landlord's part. The covering of the cistern was exposed to plain view and its character was observed by the tenant when he entered. The tenant used the cistern for nearly two years in this condition, when on a laundry day the lid was not carefully replaced after a drawing of water and a servant of the tenant stepped on a corner of the lid lying over the opening into the cistern, was precipitated into the cistern, and was drowned. The cistern was located in a shed in the rear of the kitchen of a building used by the tenant for a restaurant. When the deceased commenced working for the tenant he pointed out to her the location of the cistern, but in six weeks' service which occasionally brought her in proximity to the cistern the fact that the lid was loose was not brought to her attention. It is held: (1) The landlord is not liable in damages for the death of the servant upon the theory that the cistern was a nuisance, or upon the theory that he was guilty of actionable negligence, or upon any other theory sustained by existing law; (2) the decision of this court rendered upon the occasion of a former appeal (*Bailey v. Kelly*, 86 Kan. 911, 122 Pac. 1027), holding the landlord liable, is overruled."

All three of these cases put the landlord's liability to a tenant on the basis of whether the defect was latent or patent. The general rule is stated in 32 Am. Jur., Landlord and Tenant, § 652, p. 514, as follows:

"Although a landlord is not ordinarily responsible for defects in the demised premises, he is obligated to disclose defects known to him and not known to or discoverable by the tenant."

In the same authority in § 672, p. 542-543, we find:

"According to the weight of authority, an owner of property, unaffected by a public use, does not owe to his prospective lessee the duty of actively exerting ordinary care at the time of leasing to discover and apprise him of unknown defects which the lessee could equally well find out for himself. He is not required to exercise constant care and inspection to discover latent defects, and in order to render him liable as for a fraudulent nondisclosure, it is not enough that he knows of the source of danger, unless he knows also, or common experience shows, that it is dangerous; he is bound at his peril to know the teachings of common experience, but he is not bound to foresee results of which common experience would not warn him, and which only a specialist would apprehend.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"A landlord is under no duty to disclose to the tenant obvious defects in the

premises which are apparent to observation, especially where there is an equal opportunity for observation on the part of each party; and no liability is imposed on the landlord for his failure to make known such defects. It has been stated that the landlord owes the tenant no duty except that of not entrapping him by concealing facts which ordinary inspection would not reveal."

In 52 C. J. S., Landlord and Tenant, § 417 (3), p. 15-16, we find:

"Where at the time of the letting there are latent defects on the demised premises of which the landlord has knowledge, he is under a duty to disclose to the tenant the existence of such defects, and, if he conceals the presence of such defects, he will be liable for personal injuries resulting to the tenant or those under him from such defects. The defect is not latent if a careful examination will disclose it. It is not the dangerous condition which renders the landlord liable but the concealment, and the concealment is no longer a factor once the dangerous condition is discovered by the tenant.

"The knowledge of an agent or servant of the landlord may be imputed to him, but the fact of the examination of the premises by the landlord to ascertain their condition of repair will not authorize a conclusion that he knew of a defect. While the failure to reveal the facts as to concealed defects may not be actual fraud or misrepresentation, it is such negligence as will lay the foundation of an action against the landlord if an injury occurs, although it is not enough that the landlord knows of the source of the danger, unless he also knows or common experience shows that danger exists."

Appellant cites cases where dynamite, blasting powder, and solidified glycerin were involved, but we can see no resemblance between those cases and our case, which involves barnyard spray. We will, therefore, not set out those cases in this opinion. While we are on the subject of a dangerous or deadly commodity, however, we are constrained to hold that barnyard spray, also known as DDT, is in the same category as poisoned wheat, rat poison, and insect killers, and not in the class with dynamite, which is commonly known to be dangerous and deadly. A high degree of care is placed upon anyone who handles, stores or keeps an explosive, but barnyard spray is not an explosive. We cannot agree with appellant that the presence of barnyard spray is so unusual on a farm premises that a normal person would not expect to find it in a food cabinet. The petition does not tell us anything about the amount of barnyard spray, what form it was in, or if it was in a container. Its presence in a food cabinet could certainly be expected by a majority, if not by all, householders because vermin and insects are attracted to a food cabinet, a larder, or pantry. The appellant alleged in her petition that she herself found the spray in the cabinet "after receiving the injury," but nothing is alleged to show that she couldn't

have discovered the spray prior to her injury or at the time she first moved in. She said nothing about the spray having been mislabeled or so concealed that part of the cabinet had to be torn out or removed before the spray could be discovered, as was the situation in the Moore case. It was not alleged that appellees, or anyone on their behalf, did anything to keep appellant from discovering the spray before, as well as after, she received the injury. Appellant also failed to state whether or how the spray got into her eyes or her blood stream. The fact that she has lost her eyesight at her age is lamentable but an injury, coupled with the mere presence of a substance that might have caused such an injury, is not sufficient to constitute a cause of action, following the rule set out in *Miller v. Gabbert*, 154 Kan. 260, 118 P. 2d 523, where a demurrer to the evidence was ordered sustained. The rule there stated was:

"Where it is attempted to establish negligence by circumstantial evidence, the circumstances proved must point directly to the negligence of the defendant and must go further than to be merely consistent with negligence." (Syl. ¶ 3.)

Under appellant's own allegations the mere presence of the spray was a patent defect which could have been as easily discovered by her as by the appellees.

In view of the authorities cited and what has been said, we believe appellant's first cause of action was not sufficient and without it the second cause of action must necessarily fail. It is not necessary to cite the numerous authorities to the effect that a cause of action for exemplary or punitive damages standing alone in a petition is not sufficient. The trial court properly sustained the demurrer to both the first and second causes of action.

The cross-appeal in this case presents an interesting question but in view of the ruling on the demurrer, this court does not feel that it is necessary to dwell on this point.

The judgment of the trial court is affirmed.