No. 40,552

STATE OF KANSAS, *Appellant,* v. IRENE PENDARVIS, *Appellee.*

(313 P. 2d 237)

Opinion filed July 3, 1957.

*Fred Six,* Assistant Attorney General, of Topeka, argued the cause and *John Anderson, Jr.,* Attorney General, *Robert E. Hoffman,* Assistant Attorney General, both of Topeka, and *Phillip L. Harris,* Geary County Attorney, of Junction City, were on the briefs for the appellant.

*Richard M. Sangster,* of Junction City, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HALL, J.: This is an appeal from an order of the district court of Geary County, Kansas, sustaining a motion to quash an information.

The Kansas State Hotel and Restaurant Board caused an information to be filed against the appellee herein, Irene Pendarvis, alleging that she unlawfully and willfully operated an apartment house in Junction City, Kansas, without obtaining a state license for the year 1955 as required by law.

The appellee filed a motion to quash the information for the reason that the statute upon which the information was predicated, to wit: G. S. 1955 Supp., 36-104 is unconstitutional.

There is little dispute about the facts and in order to simplify the issues before the district court the parties stipulated and agreed as follows:

"1. That during the year 1955 and at the present time, defendant is the owner and operator of a four unit dwelling located at 747 West 1st Street, Junction City, Kansas.

"2. That defendant occupies one of these units as her home and leases the remaining three units on a month basis to tenants of her choice.

"3. That the situation outlined in (2) above existed during the year 1955.

"4. That defendant refuses to purchase a license for operating an apartment house as provided by Section 2, G. S. 1949, 36-104, as amended in 1955, and did so refuse during the year 1955."

The district court sustained the motion to quash the information.

While the state makes several specifications of error, the question in this appeal is whether G. S. 1955 Supp., 36-104 is in violation of, or contrary to, Section 17 of Article 2 of the Kansas Constitution.

Section 17 of Article 2 of the Kansas Constitution is as follows:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state: *Provided,* The legislature may designate areas in counties that have become urban in character as 'urban areas' and enact special laws giving to such counties or urban areas such powers of local government and consolidation of local government as the legislature may deem proper."

G. S. 1955 Supp., 36-104 is as follows:

"Every building or other structure, together with any building or structure used in connection therewith, kept, used, maintained, advertised, or held out to the public to be a place where furnished or unfurnished living rooms for light housekeeping accommodations may be rented as a single room or as a suite of rooms, containing four or more single units or suites, or both, regardless of the number of tenants therein, *and regardless of whether such room or suite of rooms is occupied by an, owner or operator of such a building or structure* . . . they shall, for the purpose of this act, be deemed an apartment house. . . ." (Emphasis ours.)

Appellant contends the statute is a general law and provides a reasonable and proper classification with uniform and equal operation throughout the state; therefore, it is not contrary to the Kansas Constitution.

Appellee contends to the contrary and the district court so held.

In its memorandum opinion quashing the information, the court said:

"Section 36-104 of the General Statutes of Kansas of 1949 defines an apartment house as a structure having at least four units of light housekeeping units or suites and provides for the licensing of the same. The legislature of 1955, in Section 2, Chapter 235 of the Session Laws of 1955 amended Section 36-104, among other things, by inserting the following words therein, to wit:

" '. . . and regardless of whether any such room or suite of rooms is occupied by an owner or operator of such building or structure.'

"The question therefore arises on this motion to quash, as to whether such 1955 amendment is constitutional and within the power of the legislature to enact.

"It will be admitted as a truism that in the enacting license legislation the legislature is bound by our constitution to make classifications that are reasonable and that apply equally to all members of the class legislated upon. The legislature is not empowered to require a license from a person for the privilege of living in his own home. There is no question that they had the power to require a license for rooming houses and apartment houses. They have chosen to classify an apartment house as one having four apartments. That means rental apartments. They cannot say that when an owner or operator occupies as his home one of the units of the structure, that in that case the figure four contained in the amendment shall be construed as the figure three.

"The words quoted above from the 1955 amendment offend the constitution by reason of an unreasonable classification, and cannot stand."

The constitutional question present here is one on which this court has made a great number of decisions. In fact, there are more than one hundred cases annotated under the above constitutional provision.

The constitutions of practically all of the states contain similar provisions which prohibit the passage of local or special laws.

In determining whether a law is general or special, our court follows the weight of authority of looking ordinarily to substance rather than to form and in testing such legislation have stated broadly that general laws are those which relate to, or bind all, within the jurisdiction of the law making power, while special laws are limited in the objects to which they apply.

It has always been recognized that objects of legislation may be grouped into classes for some general legislative purposes. If the class created is not too artificial in view of the purpose of the law, the act is considered general. If the classification merely serves to identify the object to be affected, the act is special. For practical purposes, therefore, the question of whether a law is general or special resolves itself into the propriety of the classification used by the legislature.

Our constitutional provision requires not only that the law shall be of a general nature but that it shall also be of uniform operation. On the subject, see 12 Am. Jur., Constitutional Law, § 541:

"The mere fact that a law only applies, however, to a limited number does not make it special instead of general. It may be general within the constitutional sense and yet, in its application, only affect one person or one place. Because its right and protection cannot be enjoyed by every citizen does not make it unconstitutional. If the law is general and uniform in its operation upon all persons in like circumstances, it is general in a constitutional sense. Laws are general and uniform not because they operate on every person in the state, but because they operate on every person who is brought within the relations and circumstances provided for—not because they embrace all of the governed, but because they may embrace all—if the persons governed occupy the position of those who are embraced. Classification is permissible under constitutional provisions forbidding local or special laws, provided not only the law applies uniformly to all persons in its operation who are in the same circumstances, but provided there is a rational basis for putting the persons to whom it applies in a different group from other persons. Therefore, the rule is settled that a statute relating to persons or things as a class is a general law, but a statute relating to particular persons or things of a class is special. Under this rule it is apparent that in every case the vice of a law, as a special law, is that it rests upon a false and deficient classification and does not embrace all of the class to which it is naturally related." (p. 239.)

Also 12 Am. Jur., Constitutional Law, § 542:

"A provision requiring uniformity of legislation does not mean that all laws must embrace all persons, since a law is said to be general and uniform, not because it operates alike upon every person in the state, but because it operates alike upon every person in the state who is brought within the conditions and circumstances prescribed by the law. As the rule is sometimes stated, it is sufficient if a law operates the same in all parts of the state under the same circumstances. The word 'uniform' in such constitutional provisions does not mean 'universal', and, therefore, the uniform operation required by them does not mean universal operation. A law may be constitutional within the purview of such constitutional provisions, and yet operate in fact only upon a very limited number of persons or things or within a limited territory. Classification made by statute meets a constitutional requirement that all laws of a general nature shall have a uniform operation, however, if based upon something which distinguishes one class from another in such a way as to suggest the reasonable necessity for legislation based upon such classification." (p. 241.)

See, also, 16A C. J. S. Constitutional Law § 489, p. 242.

See, also, excellent articles and collection of Kansas cases in 21 JBK 375 and 13 JBK 206.

These principles of construction have been repeated over and over again in the cases decided by this court under Section 17 of

Article 2 of the Kansas Constitution. The parties to this appeal have cited and quoted *State, ex rel., v. Allen County Comm'rs,* 156 Kan. 248, 133 P. 2d 165; *Board of County Comm'rs v. Robb,* 166 Kan. 122, 199 P. 2d 530; *Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915; *Board of Education v. Davis,* 87 Kan. 286, 123 Pac. 885; *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.,* 171 Kan. 581, 236 P. 2d 782; and *Barker v. Kansas City,* 149 Kan. 696, 88 P. 2d 1071, all of which enunciate these principles.

In *Board of County Comm'rs v. Robb,* supra, the court said:

"If a law of general form operates uniformly on all members of the class to which it applies, it is not open to the objection it is a special law if the classification is not an arbitrary and capricious one, nor in such case does it contravene article 2, section 17, of the constitution of the state of Kansas." (Syl. 4.)

In *Rambo v. Larrabee,* supra, the court said:

". . . It is entirely competent for the legislature to adapt its laws general in their nature to general classifications, either of individuals, surroundings or conditions, but such classification must always be a natural one, not an arbitrary or fictitious one. . . ." (p. 644.)

In *Board of Education v. Davis,* supra, the court said:

"An act which operates on all persons and things standing in the same situation and circumstances and which may be reasonably placed in a single class is a general law . . . A law may be special by being so restricted as not to include all the subjects of a class and also where it excludes subjects of a class from its operation. . . ." (pp. 289, 290.)

The question before us then resolves itself to this: Are the constitutional requirements fulfilled by G. S. 1955 Supp., 36-104? To answer the primary question of whether it is a general law with uniform application we must first answer the secondary question of whether the classification of the statute meets the above tests of construction as to reasonableness.

The state of Kansas has long exercised its authority under the police power over hotels, restaurants and apartment houses through the enactment of a licensing and regulatory act in 1913. (Chapter 204, Laws 1913—G. S. 1949, Chapter 36.) These laws have been amended from time to time and were most recently amended in 1955.

Article 1 of chapter 36 defines hotels (36-101), rooming houses (36-102) and apartment houses (36-104). Sections 36-101 and 36-104 and a number of other sections were amended in 1955 primarily to improve enforcement of the law and to bring motels

within the scope of the act. Among other things, section 36-104 was amended as follows:

". . . and regardless of whether such room or suite of rooms is occupied by an owner or operator of such a building or structure . . ."

It was the contention of the appellee and the decision of the district court that this amendment makes an otherwise valid classification based upon the number of rental units arbitrary, fictitious and capricious for the reason that the statute as amended places the rental units and a unit occupied by the owner in the same class under the definition of an "apartment house."

Neither the district courts nor the appellee challenged the police power of the state to regulate or license apartment houses, nor the basic classification of "number of units" used by the legislature.

The district court concluded that the classification could not operate on the owner who occupied one of the four units in the apartment house and since the statute operates only on apartment houses with four or more apartments, the owner's occupancy of one reduces the number of rental units to three and thus the house is not subject to licensing under the statute.

The court cited no authority for its decision and the appellee in her brief cites only Kansas cases on the general rules of construction under the annotations of section 17 of article 2 in support of her contention. Both appellant and appellee concede that the cases under section 17 of article 2 turn pretty much on their individual facts.

Appellant has cited several Florida cases where the constitutionality of a Florida statute was in question. (*State ex rel. Warren v. Lehman, Sheriff*, 100 Fla. 970, 130 So. 716; *Hiers v. Mitchell*, 95 Fla. 345, 116 So. 81; and *Johnson v. State ex rel. Fox*, 99 Fla. 711, 127 So. 317.)

In the definition of "apartment house" the Florida statute made an exception where rooms were occupied by the owner as a home or residence. The statute was attacked on the theory that such exclusion of the owner made the law discriminatory.

The court held otherwise stating that it was the obvious intent of the legislature to relieve from the license tax a home owner who rents rooms in his residence.

While the Florida and Kansas statutes in question are different, these cases have some persuasion here.

While the exercise of the police power is not questioned in this

case, a consideration of the authorities concerning it does shed some light on the question here.

It is well settled that the state or a municipality may license and regulate the operation of an inn, apartment house, rooming house, restaurant or similar establishment. This authority to regulate and license is based upon the police power of the state in the interest of public health, safety and welfare. (See 11 Am. Jur., Constitutional Law, § 289 at page 1051; 28 Am. Jur., Innkeepers, §§ 31, 32; 43 C. J. S. Innkeepers § 6 at page 1145; and 43 C. J. S. Innkeepers § 4.)

The fixed rule and basic standard by which the validity of all exercises of the police power is tested is that the police power of the state extends only to such measures as are reasonable and that all police regulation must be reasonable under all circumstances. (11 Am. Jur., Constitutional Law, § 302.)

The regulation and licensing of hotels, apartment houses, rooming houses and motels based upon the "number of rooms" has long been established as a reasonable exercise of the police powers *as well as reasonable class legislation* by the legislature. (Emphasis ours.) See 28 Am. Jur., Innkeepers, § 31:

"As in the case of other forms of regulatory legislation, inns, hotels, restaurants, boardinghouses, and other places where similar accommodations are furnished may be classified on a reasonable basis for the purpose of public regulation. Thus, classifications for the purpose of inspection, sanitary measures, and protection from fire, based upon the number of rooms, the number of guests, and the amount they pay, the locality of the establishment, and the capacity for service accommodation in restaurants have been held not to be unreasonable or class legislation. . . ."

On the "number of rooms" as a reasonable classification by the legislature—see, also, *Miller v. Strahl,* 239 U. S. 426, 60 L. ed. 364, 36 S. Ct. 147; *Hubbell v. Higgins,* 148 Iowa 36, 126 N. W. 914, Ann. Cas. 1912B 822; and an annotation in L. R. A. 1915B at page 1100.

On similar questions involving trailer camps, motor courts and motels—see 115 A. L. R. 1398 and 22 A. L. R. 2d 774.

In the enactment of laws governing the licensing and regulation of hotels, rooming houses, apartment houses and motels the Kansas legislature has always used as its basic classification the "number of units"—in the case of hotels and motels, five or more and in the case of apartment houses, four or more. Under the authorities this classification is reasonable both as to the exercise of the police

power and in compliance with the constitutional provision of general and uniform laws.

In the light of these general authorities we cannot accept the appellee's contention that the adoption of the amendment to G. S. 1955 Supp., 36-104 has the effect of changing the classification in the statute from "reasonable to unreasonable."

Appellee's contention is likewise not substantiated by logic or reason. In its wisdom, the legislature determined that apartment houses of "four or more  .  .  .  units" affected the public health, safety and welfare and should be licensed and regulated. The law applies generally to all apartment houses with "four or more .  .  . units." It operates uniformly on all owners who may occupy one of these units. The fact that the owner does occupy one of the units does not change the legislative reason for licensing and regulation. Of course, the figure four might well have been the figure five or six, but in using this basis for reasonable classification the legislature had to draw the line somewhere.

We cannot agree with the district court which reduced the statutory number from four to three units because the owner occupied one. The legislature did not intend such a modification of the statute. To the contrary, the 1955 amendment made it very clear that the occupancy of a unit by the owner was not an exception to the statutory number of four units.

While the statute in question is probably entitled to the usual presumption of constitutionality we feel it is not necessary to invoke the presumption or rely upon it in this case.

The order of the district court quashing the information is reversed and the case remanded for further proceedings.