No. 45,754

Betty Tillotson and Clarence Stiger, Jr., heirs at law of the deceased, Beverly Jean Stiger, and Betty Tillotson, as Administratrix of the estate of the deceased, Beverly Jean Stiger, *Appellants*, v. Thelma Abbott, *Appellee*.

(472 P. 2d 240)

Opinion filed July 17, 1970.

*Ron Heck*, of Michaud and Cranmer, of Wichita, argued the cause and was on the brief for appellants.

*Jerry G. Elliott*, of Foulston, Siefkin, Powers, Smith and Eberhardt, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: This action was brought to recover for injuries to and death of Beverly Jean Stiger resulting from burns received in an apartment rented by her from the defendant. Her clothing was ignited by contact with an open-faced radiant gas heater located in the living room of her apartment. She had lived there from August 1965 to March 1966 when this tragedy occurred.

The trial court sustained defendant's motion for judgment at the close of plaintiff's evidence.

The particular heater is described in the record as an open-faced radiant gas heater. When put in operation it is connected with a gas source and a small valve on the side opens the burner to gas. The gas is lighted with a match in the front at the base of the radiants. The burner orifices are at the base of a series of ceramic waffled radiants. When the gas from the orifices is lighted the flame causes these radiants to heat and they became almost incandescent. The heat from the radiants is directed outward and upward from the face of the heater. The flame stays within and behind the radiants. Such a heater is not designed to be attached to a vent pipe. It has a metal guard in front five inches away from the radiants and five and a half inches high from the base.

The testimony established that this particular heater was not defective and that it was operating in a proper manner. It was installed in the apartment prior to the time Miss Stiger rented the same from defendant. The heater was first installed in a bedroom and later in 1959 or 1960 it was moved into the living room at the suggestion of someone in the Wichita fire inspection department. The Wichita fire department had inspected the heating units in this building one month before the tragedy occurred. Nothing was said concerning this particular installation. A member of the Wichita fire rescue squad who was called to the scene said that the installation and use of the heater was not in violation of the city ordinances at that particular time.

A deputy state fire marshal investigated the tragedy within an hour after it occurred. He testified this type of heater is a "death trap". It is dangerous because people stand too close and their clothing catches fire. He talked with Beverly Jean Stiger in the emergency room of the hospital. Miss Stiger told him that on arriving home she felt cold. She lighted the heater and then went

into the kitchen to put a frozen food dinner in the oven. She then returned to the living room and backed up to the heater to get warm. Her dress caught fire. With her clothing on fire she first ran into the bathroom and then downstairs where the flames were finally extinguished.

She died as a result of the burns received.

The deputy state fire marshal further testified the heater was properly installed when he saw it. The flame remained within the radiants. The heater was located with sufficient distance between the heater and the wall. It was connected with the gas source by a rigid iron pipe. The heater had the American Gas Association sticker attached to the back of the appliance. This indicated it had been approved by the association as a safe appliance.

Negligence was alleged in the petition as follows:

"That the deceased, Beverly Jean Stiger, rented the apartment as aforesaid, from the defendant, prior to the time of the accident heretofore stated; that through the negligence and careless actions and omissions on the part of the defendant, the said Beverly Jean Stiger was so burned as to cause her death. That the defendant provided the plaintiff with an open faced gas heater for her apartment which was defective, unsafe, dangerous, improperly constructed, and designed in such a manner that it would readily cause damage or injury to persons and in particular the deceased."

The pre-trial conference order provided:

"Plaintiffs claim the defendant was guilty of the following acts of negligence:

"A. Violation of K. S. A. 36-304 and 36-305 in that the heating unit in the room where the fire occurred did not comply with the requirements for an apartment or a rooming house under these statutes, specifically Requirement No. 41-1-13.

"B. Violation of the Wichita City Code 21.16.060, 21.16.070 and 21.16.080 in that the room was smaller than the City Code provides and the heater was located in a sleeping room in violation of the City Code.

"C. Installing and proving (sic) a tenant with a defectively designed and unsafe heater in that the heater had an inadequate guard to keep clothing out of the flame.

"D. Failing to warn the deceased of the danger in using said heater in said condition."

A jury was called to try the case. Immediately preceding the trial the plaintiffs moved for permission to amend the pre-trial order to permit evidence that the open-faced gas radiant heater was being used for a purpose and in a manner other than that for which it was originally designed. Plaintiffs for the first time insisted that the heater was designed solely for use in fireplaces or in other similar places where the heater would be recessed and vented.

The defendant resisted this request saying she had not previously been advised this would be an issue. She advised the court she had no evidence to counter such a contention. If permission to amend was granted she would insist upon a continuance in order to obtain evidence against this new contention.

None of the plaintiffs' witnesses were permitted to testify that this heater was originaly designed solely for use in fireplaces or in other similar places where the heater would be recessed and vented because neither the petition nor the pre-trial order disclosed such an issue would be presented.

The plaintiffs predicate error on this refusal to allow amendment of the pre-trial order.

A pre-trial order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. (K. S. A. 60-216.)

The pre-trial conference and the order entered thereon are an important part of the procedural process. They are provided to acquaint each party in advance of trial with the factual contentions of the opposite parties as to matters in dispute. The opportunity for maneuver and surprise during the trial is reduced. As a result of the pre-trial conference all parties are better able to prepare their testimony on the issues to be tried. (*Brown v. Hardin,* 197 Kan. 517, 519, 419 P. 2d 912; *Evangelist v. Bellem Research Corporation,* 199 Kan. 638, 641, 433 P. 2d 380; *Trimble, Administrator v. Coleman Co., Inc.,* 200 Kan. 350, 358, 437 P. 2d 219.)

Judicial discretion is granted to the trial court in permitting or refusing modification and amendment of the issues outlined in a pre-trial order. Absent a manifest abuse of discretion the trial court's order refusing modification should be upheld on appeal. (K. S. A. 60-216; *Trimble, Administrator v. Coleman Co., Inc.,* supra.)

The amendment of the pre-trial order sought by plaintiffs in this case would have injected a new issue into the trial. The issue would have had to be resolved by testimony concerning the design and purpose of this particular heater. The issue was of a nature that expert testimony might well have been necessary. It was admitted the defendant had no knowledge of such facts. The right to amend was sought the morning of the trial. Under these circumstances the trial court did not abuse its discretion in refusing to permit amendment of the pre-trial order.

In sustaining defendant's motion for judgment at the close of plaintiffs' evidence the court reasoned that the dangerous characteristic of the heater (open flame) was obvious and patent, that this characteristic was equally discernible to the tenant and to the landlord and that the landlord had no duty to warn the tenant or call this obvious and dangerous characteristic of the heater to the attention of the tenant.

Plaintiffs submit this was error. They contend the case of *Nave v. Hixenbaugh*, 180 Kan. 370, 304 P. 2d 482, is controlling here and that the judgment should be reversed.

In *Nave* the plaintiff stopped in a filling station while traveling on a highway. Her skirt was ignited while standing in front of a gas stove. The stove was being operated by the defendant in a public area of the station for the convenience of his customers. The stove was defective. Squares of isinglass in the front of the stove had been replaced with squares cut from tin cans. There was evidence that the stove had no draft diverter. When the wind blew down the chimney and the door of the station was opened a down draft was created which caused flames to come out of openings in the front of the stove.

The case is not controlling here. In *Nave* the plaintiff was a business invitee and as such the defendant was obligated to maintain the premises in a reasonably safe condition for his customers. The defendant was found guilty of negligence in failing to keep the stove in a reasonably safe condition. The discussion in the opinion concerning knowledge and appreciation of the danger was directed toward resolving the question of contributory negligence of a business invitee.

Beverly Jean Stiger was not a business invitee in the present case. The heater in her quarters was not located in an area open to the public or to the other tenants living in the building. The heater had been located in her private quarters. She had operated and used it to heat her living room from August 1965 to March 1966. This included the fall and winter months. Plaintiffs' witnesses testified that the heater was not defective. It was operating in a proper manner immediately after the tragic incident.

The legal duty owed to a tenant is not the same as that legal duty owed to a business invitee.

In *Bailey v. Kelly*, 93 Kan. 723, 145 Pac. 556, a 16 year old employee of a tenant fell through a loose cistern cover and was killed.

The landlord did not advise the tenant or his employee of the danger from this loose cistern cover. A plaintiff's verdict was reversed on appeal. This court held the landlord was not subject to liability for physical harm resulting to the tenant and others from a dangerous condition which was obvious, known to the tenant and which existed at the time the tenant took possession. In the absence of a covenant by the landlord to repair the tenant accepts leased property subject to its obvious, patent or known dangers. (See Restatement of the Law [Second] Torts 2d § 352.)

The case of *Mathes v. Robinson*, 205 Kan. 402, 469 P. 2d 259, is cited by plaintiffs. It is not controlling here because the dangerous condition of the premises in *Mathes* was from a latent condition, the emission of carbon monoxide gas which was not obvious to sight or smell.

The rule of liability as between landlord and tenant was considered and applied in *Branstetter v. Robbins*, 178 Kan. 8, 283 P. 2d 455. In *Branstetter* the landlord gave no warning of the danger from a can of barnyard spray which remained in a food cabinet in the house rented to a tenant. The court held:

"In a case of landlord and tenant there is a duty on the landlord to disclose to the tenant all hidden and latent defects in the premises within his actual knowledge, and his failure to do so will make the landlord liable in damages to the tenant, or a member of the tenant's family, for injuries directly resulting from undisclosed defects. On the other hand, a landlord is not required to be an insurer of his tenant and the other members of the tenant's family. (Syl. ¶ 1.)

"Where a defect complained of is as discernible, upon reasonable investigation, to the tenant as it is to the landlord, there is no duty of disclosure owned by the landlord to the tenant. (Syl. ¶ 2.)

In the present case the dangerous characteristic of the heater (open flame) was obvious. The tenant lighted the heater. The heat emanating from the open gas fired radiants was obvious and the consequences of contact with the open flame could have been appreciated by any child. The decedent was nineteen years of age and had operated this heater throughout the fall and winter of 1965-66. This was not a hidden or latent condition. The landlord had no duty to warn of what was obvious and known to the tenant.

Other states have held an unprotected gas heater and other similar heating equipment in rental quarters constitute a patent condition equally discernible to the tenant and landlord. The landlords in the following cases were relieved of liability for such injuries:

*Hyde, Next Friend v. Bryant,* 114 Ga. App. 535, 151 S. E. 2d 925; *Yuppa v. Whittaker,* 88 R. I. 214, 145 A. 2d 255; *Davis v. Marr,* 160 Colo. 27, 413 P. 2d 707; *Cooper v. Boston Housing Authority,* 342 Mass. 38, 172 N. E. 2d 117 and *Hanson v. Luft,* 58 Cal. 2d 443, 24 Cal. Rptr. 681, 374 P. 2d 641.

The plaintiffs contend that the defendant was operating an apartment house as defined by K. S. A. 36-104 and was subject to a regulation adopted by the hotel and restaurant board effective January 1, 1966, which prohibited open-faced gas heaters in apartment houses except those installed in recessed vented fireplaces. They contend the landlord violated a duty to the tenant placed upon her by this statute and regulation.

The statute in pertinent part reads:

"Every building or other structure, together with any building or structure used in connection therewith, kept, used, maintained, advertised, or held out to the public to be a place where furnished or unfurnished living rooms for light housekeeping accommodations may be rented as a single room or as a suite of rooms, containing four or more single units or suites, or both, regardless of the number of tenants therein, and regardless of whether any such room or suite of rooms is occupied by an owner or operator of such a building or structure, shall, for the purpose of this act, be deemed an apartment house." (Emphasis supplied.)

At the end of plaintiffs' evidence the facts were not disputed. Applicability of a statute based upon undisputed facts is not a question of fact for a jury. The question becomes one of statutory construction to be determined by the court. (*State, ex rel., v. Moore,* 154 Kan. 193, 197, 117 P. 2d 598; *State ex rel., v. Mills,* 171 Kan. 397, 400, 233 P. 2d 720.)

The plaintiffs' evidence established the following facts: The defendant purchased the building sometime prior to 1959 and has maintained it without change since that time. There were two rental suites in the south half of the building. The decedent lived in the south upstairs apartment. Each suite had separate outside doors and consisted of a living room, bedroom, kitchen and bathroom. Both south suites were held for rent to the public and occupied by tenants. The upstairs apartment had an entryway from the front with an enclosed staircase leading to that apartment. There were four mail boxes on the front of the building. The north half of the building was similarly arranged with a living room, bedroom, kitchen and bath both upstairs and down. However, the stairway was an open staircase leading to the downstairs living room. The living room downstairs was used by the defendant as a reception or

waiting room for defendant's customers who came to her for psychic analysis. Defendant had a maid-receptionist who lived in the balance of the downstairs apartment. The maid's quarters were separated from the reception room by a curtain or drape. There was no door which could be locked to insure the maid's privacy. The defendant testified that when she purchased the building it contained three family units exactly as they were when this tragedy occurred. No portion of the north half of the building had ever been rented by her to other persons.

The maid testified that she received board, room and a weekly salary. However, the maid and the defendant cooked their own separate meals.

The defendant never applied for an apartment house license. A representative of the state hotel and restaurant board which regulates and licenses apartment buildings inspected the building on several occasions prior to the tragedy. On the most recent occasion the defendant advised the representative she had three units. There were two rental units on the south and one unit occupied by herself and the maid on the north side.

No license was required by the board.

Under these facts we must determine if the building was subject to regulation as an apartment house under K. S. A. 36-104. If the statute was not applicable, the defendant did not violate the apartment house regulation prohibiting open-faced gas heaters and the trial court's judgment was correct.

The defendant-appellee contends the interpretation placed upon the statute by the hotel and restaurant board, in not requiring a license, should be given controlling significance under the rule expressed in *Cities Service Gas Co. v. State Corporation Commission,* 192 Kan. 707, 391 P. 2d 74. We do not consider the failure to license the building controlling in this case although it is significant.

The interpretation placed upon a statute by an administrative agency whose duties are to carry the legislative policy into effect should be given consideration and weight when the statute is ambiguous and the intent of the legislature is not clear. (See *Lowden v. Garvie,* 152 Kan. 388, 103 P. 2d 832; *Graves v. Armstrong Creamery Co.,* 154 Kan. 365, 118 P. 2d 613, 140 A. L. R. 1267n.) However, this does not mean this court must follow an administrative interpretation placed upon a statute when the interpretation of the administrative body is erroneous. We will examine this statute in light of the facts of this case to determine its applicability.

There can be no doubt after reading K. S. A. 36-104 that the statute is ambiguous. In defining a building subject to license as an apartment house the statute refers to every building *kept, used, maintained, advertised or held out to the public.* A building merely being advertised but not being used could hardly be subject to a license. It is the use of the building and not the advertising which is intended to be licensed and regulated. Yet these words are used in the alternative. The statute covers single rooms or suites of rooms *which may be rented.* The required number of such rooms or suites is set at four, regardless of the number of tenants and regardless of whether the owner or operator occupies any such room or suite. A tenant is not further defined.

We have previously held when the owner lives in the premises and rents three apartments to others the building falls within the definition. The owner's living quarters are included to make the fourth suite. (*State v. Pendarvis,* 181 Kan. 560, 567, 313 P. 2d 237.)

In the present case the building was originally constructed in a manner which would accommodate four tenants or families. The defendant had retained two of these for her own use and that of her employee. In a technical sense those rooms reserved had not been kept, used, maintained, advertised or *held out to the public.* The living quarters furnished without charge to an employee (such as the maid, chauffeur, cook or yardman) living on the premises of the owner-employer are not rooms or suites held out to the public for rent within the meaning and intent expressed in K. S. A. 36-104. These are kept for the use of the employees of the owner. To interpret the statute otherwise would require a person to be licensed if he furnished living quarters or rooms to three employees of the household.

Therefore, we hold the defendant's building was not subject to the regulatory provisions of the hotel and restaurant board prohibiting the use of open-faced gas burning heaters. Defendant violated no duty to plaintiff. The district court did not err in sustaining defendant's motion for judgment at the close of plaintiffs' evidence.

Accordingly the judgment is affirmed.